[Robertson v. Louisville & Nashville Railroad Company.]

# Robertson *v.* Louisville & Nashville Rail Road Company.

## *Action by Passenger for Failure to carry to Destination.*

1. *Suit by passenger for failure to carry to destination; what sufficient complaint in.*—Where the suit is by a passenger against a common carrier, a complaint which alleges that the plaintiff purchased a ticket entitling her to transportation as a passenger, from Birmingham to Belle Ellen, and that she took passage on a train running between these points; that before reaching Yolandy, an intermediate station, she was told by the conductor or the flagman on said train, that the car in which she was then riding would not go to Belle Ellen, but would go to Brookwood, and that she must change cars at Yolandy, and a car in front of hers was pointed out by them as the car for Belle Ellen; that acting on such directions she went into the car designated by them, and as a consequence of doing so, she was left in said car on the side track at Yolandy, while the train including the car in which she had previously ridden, went on to Belle Ellen, discloses a good cause of action.

2. *Same; what complaint need not allege.*—In such a case, the *gravamen* of the action being, the defendants wrong in leaving the passenger at the intermediate point, instead of carrying her to her destination, so far as the right of recovery is concerned it is immaterial whether the alleged wrongful act of the conductor or flagman was negligently, willfully, knowingly or even maliciously done, and the complaint need not use either of these terms in describing their action.

3. *Same; what allegations proper in complaint.*—Though in such a case, the plaintiff is entitled to recover if her failure to reach her destination was caused by any act of the conductor or flagman, she may, for the purpose of fixing the amount of her damages, aver and prove that they acted maliciously, or with circumstances of aggravation.

4. *Same; what proper defense in.*—In such case, the general issue is the only proper plea. If defendants wrong had any causal

[Robertson v. Louisville & Nashville Railroad Company.]

connection with the result complained of, it is of no conse-
quence that the plaintiff could have avoided the result by
making other inquiries as to the proper car for her to take,
or anything of that sort. The plaintiff had the right to rely
implicitly on what the trainmen told her in this connection,
and to act accordingly, and consequently there is no room for
pleas of contributory negligence.

5. *Passenger; changing cars and failing to reach destination, when
carrier liable.*—Where a passenger, with a ticket entitling her
to be carried between two points, embarks on a car running
between these points, and before arriving at her destination,
changes into another car, which though up to that time form-
ing a part of the train on which she was then riding, is left,
with her in it, at an intermediate station, and she thereby
fails to reach her destination, the carrier is liable to her if
the change of cars was made at the instance of, or in obe-
dience to instructions from the conductor or flagman on the
train.

6. *Same; when carrier not liable.*—In such case, if the passenger
changes into the car of her own motion, and without fault or
inducement on the part of the trainmen, in the mistaken be-
lief that it, and not the car in which she had previously rid-
den, would go to her destination, and in consequence was left
at an intermediate station, the carrier is not liable.

7. *Charge; what erroneous.*—In a suit by a passenger against a
carrier for failure to carry her to her destination, when the
undisputed testimony shows that she left the car in which
she was riding, and went into another car, which was left
on a side track at an intermediate station with her in it,
and the plaintiff's testimony tends to show that both the con-
ductor and flagman of the train on which she was riding
instructed her to make the change, and the flagman testifies
that he gave the plaintiff no such instructions, and had
nothing to do with her changing cars, and the conductor is
not examined, being dead, it is error to instruct the jury that
"Unless they are reasonably satisfied that the conductor *and*
flagman told plaintiff to get in the wrong car, and thus was
left, then they must return a verdict for the defendant."

8. *Evidence; what improper.*—In such a case, the plaintiff cannot
testify, whether any one was left except herself, or who was
her companion on the trip, or whether such companion
changed cars in the same manner as she did.

9. *Same.*—Nor, in such a case, can the plaintiff testify that a night
watchman and a section foreman of defendant, who had

[Robertson v. Louisville & Nashville Railroad Company.]

nothing to do with the running of the train, saw her crying at the station where she was left, and after she had told them that she was left, did nothing to assist her.

10.  *Same.*—It is not competent to prove the fact that the plaintiff was a witness in another case against the defendant, involving a charge of improper conduct against the same conductor and flagman, as independent evidence to show that they willfully or maliciously caused her to be left short of her destination.

APPEAL from Circuit Court of Bibb.

Tried before the HON. JOHN MOORE.

The appellant brought this action against the appellee, and sought to recover two thousand dollars damages for the failure of the appellee to carry her safely as a passenger from Birmingham to Belle Ellen. The complaint as originally filed contained two counts, which alleged in substance that the plaintiff, on Jan. 23rd, 1902, purchased a ticket from Birmingham to Belle Ellen, on the line of defendant's road and went on board of one of defendant's trains which ran between these points; that shortly before reaching Yolandy a station about thirty miles from Birmingham, and from which point a spur track leaves the main line for Brookwood, the plaintiff was told by the conductor in charge of the train, or by the flagman "that she was in the Brookwood coach, when she was in the Belle Ellen coach, and pointed out to the coach in front as the one for Belle Ellen, and told her to change cars at Yolandy and to go into the front car." The complaint then alleged that in obedience to these instructions the plaintiff changed cars at Yolandy, going into the car pointed out to her, which car was at that point detached from the train and left on a side track to be taken by another train to Brookwood, and that the train, leaving this car but taking the one in which plaintiff had previously ridden, went on to Belle Ellen, leaving plaintiff in ignorance of its departure, and without any means of reaching her destination, that there was no train by which she could reach her destination until the next day. The complaint then alleged that she was left at Yolandy about sun down in the evening,

in extremely cold weather, and that there were no accommodation for travellers at Yolandy, and that she was compelled at great expense to get some one to go with her to the next station, a distance of five miles to obtain a place where she could spend the night; that she was compelled to walk this distance, carrying her infant in her arms in the cold, and was compelled to sleep in an open room without fire, and in consequence she was sick for several weeks, and suffered greatly in mind and body, "all by reason of said willful or wanton order of the said conductor or flagman as aforesaid."

The second count of the complaint is substantially the same, but concludes that the damages suffered by the plaintiff were "all consequent upon the said negligent act of the said conductor or flagman of the said train as aforesaid."

The complaint was amended by the addition of two counts, numbered three and four. The third count alleged that plaintiff bought a ticket of the defendant for transportation from Birmingham to Belle Ellen, and defendant took her aboard its train and undertook to carry her to her said destination but put her off its train at Yolandy between the termini of the route and about thirty miles from Belle Ellen near night on said day and then willfully or wantonly allowed her to remain out all night in the bitter cold with her infant baby.

The fourth count alleged that the plaintiff bought a ticket of defendant for passage on its passenger cars from Birmingham to Belle Ellen, and that the defendant took her aboard its passenger car and undertook to carry her to her said destination, but put her off at Yolandy, a point between the termini of the route, near sunset on said day and then willfully or wantonly allowed the plaintiff to remain out all night exposed to the bitter cold with her infant baby.

The first count was demurred to on the ground: 1st. Because said count charges wanton or wrongful negligence; and 2nd. Because said count attempts to charge wanton negligence and states facts showing simply negligence only.

The demurrers were overruled by the court.

The third and fourth counts were demurred to "Because said counts fail to allege in what manner plaintiff was put off the train." "Because they fail to allege the defendant was a common carrier." "Because they fail to allege any wrongful conduct of the defendant or its servants or agents." "Because the averments fail to set up matters which constitute wanton or willful negligence."

These demurrers were sustained.

The defendant filed the plea of the general issue and six special pleas, setting up in various form that the plaintiff was guilty of contributory negligence in leaving the car in which she was riding and going into the Brookwood car, which was sidetracked at Yolandy.

The plaintiff as a witness in her own behalf testified, that on Jan. 23rd, 1902, she was in Birmingham, Ala., and on that day purchased a ticket on defendant's road to Belle Ellen and boarded one of its trains for the trip; that her ticket was taken up by the conductor before reaching Yolandy, a station about thirty miles from her destination, and from which point there was a branch line to Brookwood; that before reaching Yolandy she was told by the conductor and the flagman to be sure and change cars at that point; and that they informed her that the car in which she was then riding was the Brookwood car, and pointed out to her the car in front of her as the proper car for her to take to go to Belle Ellen; that acting on these instructions on her arrival at Yolandy, she went into the car pointed out to her and took a seat therein; that said car was set on a side track at Yolandy, and the train, including the car in which she had been riding went on to Belle Ellen without her. She testified that she did not know that the car into which she was directed was the Brookwood car until informed by a passenger therein after the balance of the train had left Yolandy going in the direction of Belle Ellen; that she got to Yolandy about sundown and stayed there about fifteen minutes and then hired Archie Black to go with her to a station about five miles distant where she spent the night; that the night was dark and ex-

tremely cold; that she was very much distressed and was crying when she found that she had been left by her train; that she took cold that night and was sick for three weeks from it. The plaintiff was asked the following questions: "State how many passengers were in the car you were ordered out of." "Did any one of the other three passengers in that car change from that car before getting to Yolandy." "Was there any other passengers in that car going to any point between Yolandy and Belle Ellen and state whether that passenger was changed under like orders as yourself." "Was any one left at Yolandy besides your self." "Did Black get out of the other car also and go into the front car." "Did Archie Black get out of that car and go into the other car." "Was Archie Black your companion on that trip." "Did you see Archie Black get out of that car and go into the other car." "Did you see your companion Black at Yolandy." "Was Archie Black left at Yolandy." The court refused to permit any of these questions to be answered, and the plaintiff separately excepted.

On further examination, the plaintiff having testified to seeing and talking with a night watchman and a section foreman of the defendant at Yolandy on the evening she was left there, and stated that she informed them of that fact, and that she did not know where she could spend the night, and that she had her baby with her, and was crying when she talked with them, was asked the following questions: "Did the night watchman at Yolandy see you crying." "Did the night watchman at Yolandy do any thing to care for you that night." "Did you tell the section foreman of the defendant you had been left, and did he see you crying." "Did the section foreman do any thing to care for you, when you told him you had been left and he saw you crying."

The court refused to allow any of said questions to be answered, and the plaintiff separately excepted.

Plaintiff was asked: "Was not you and Archie Black summoned to Birmingham to testify against the Louisville & Nashville Railroad Company in a case where the flagman and conductor on the train at the time you was left, had been charged with misconduct in aiding a

woman to alight from the train at Big Springs, and were you not on your way home from Birmingham where you had gone in answer to said summons at the time you were left." The court excluded the answer and the plaintiff excepted.

Archie Black, a witness for plaintiff, testified that he was a passenger on the same train with her and his destination was Big Springs which was South of Yolandy. That he was in the car with her when the conductor came through and asked her where she was going, and when told that she was going to Belle Ellen, he told her to change cars at Yolandy, that he came through several times and told her not to forget to change cars at Yolandy that in accordance with these directions she went in the forward car and took a seat; that the car was set off on a side track and the rest of the train went on in the direction of Belle Ellen. That after being left at Yolandy he and the plaintiff walked to a station about five miles in the direction of Belle Ellen; that they left Yolandy about sundown and got to the place where they spent the night about nine o'clock, that the night was dark and very cold, and that plaintiff complained of the cold both while walking there and during the night. On cross examination he testified that the conductor pointed out the car for Belle Ellen; that they went into that car and were left at Yolandy.

One Batson, a witness for the defendant, testified that he was the flagman on the train of defendant which ran between Birmingham and Belle Ellen Jan. 23rd, 1902. He described the position of each car in the train, and stated that he did not at that time know the plaintiff and did not remember seeing her on the train; that on that trip he announced in each car of the train which went to Belle Ellen and Blockton, before the train got to Yolandy that passengers for Brookwood, Mill Dale and Searls would change cars; that Yolandy was the next stop and the car for those points would be put on a switch on the left hand side of the track; that he made this announcement but once in each car. He stated that he did not speak to the plaintiff personally, and did not tell her

[Robertson v. Louisville & Nashville Railroad Company.]

to go to the front car, and did not inform her that the front car was the car for Belle Ellen, and that the conductor did not tell her to go into that car, in his presence or hearing; that he did not know the plaintiff was left and the conductor said nothing to him about any one being left on that trip.

It was shown that the conductor, Rutherford was dead at the time of the trial.

The court at the request of the defendant gave the following written charges, and to the giving of each of these charges the plaintiff separately excepted: (1.)　"The court charges the jury that if they believe from the evidence that the plaintiff by her own mistake took the wrong car and was left at Yolandy without fault on the part of the defendant, then you should return a verdict for the defendant."

(2. )　"The court charges the jury that unless you are reasonably satisfied that the defendant's agent or agents told plaintiff to get the wrong car, then you must return a verdict for the defendant." ·

(3.)　"The court charges the jury that unless they are reasonably satisfied that the conductor and flagman told plaintiff to get into the wrong car, and thus was left then you must return a verdict for the defendant."

There was a judgment for the defendant, and plaintiff appeals, and assigns as error the various rulings to which exceptions were reserved.

Logan & Vandegraaff, for appellant.—The court should have permitted the plaintiff to answer the questions asked her, they tended to show to the jury that there were other passengers aboard that car bound for points beyond Yolandy. and that some of them were her companions, and were also left as was the plaintiff, they being under the same influence of the conductor and flagman.　It was certainly a circumstance that the jury should look to in order to say whether or not the plaintiff acted under the order or direction of the flagman or conductor in taking the wrong car. It was competent evidence as a part of the res gestae.—Mobile Ry. Co. v. Ashcraft, 48 Ala. 15.　If either the conductor or the flag·

man told the plaintiff to get into the wrong car the company is liable and the charge requiring a verdict for the defendant unless both the conductor and the flagman directed her is clearly erroneous

ELLISON & THOMPSON, *contra.*—The evidence offered by the plaintiff as to the acts of others on the train was not competent, and the case cited by the appellant has no application, in such a case as the present. There was no situation of peril confronting the plaintiff. The court did not err in the charge given. Appellant's evidence without any conflict showed that both the conductor *and* flagman told her to get into the wrong car. No witness for the plaintiff testified that *only the* conductor or *only* the flagman told her to go in the car and her witness placed the conductor *and* the flagman together, when they told her to go there. Under this state of the evidence the charge was proper.

McCLELLAN, C. J.—It was the defendant's duty, under the averments of the first and second counts of the complaint, to carry the plaintiff from Birmingham to Belle Ellen. The averments of those counts going to show that she was a passenger on defendant's train on its schedule run from the former to the latter place, and fully entitled, as such, to be carried to Belle Ellen, were proved without conflict—in fact, admitted—on the trial. The evidence is clear in support of the conclusion that this duty would have been performed, and that the plaintiff would have been carried to Belle Ellen, but for the fact that at Yolandy, an intermediate station, whence there was a branch railway to Brookwood, she was sent out of the car, in which up to that time she had been riding, bound for Belle Ellen, into a car which, though up to that time a part of the same train, was at that point to be detached and left on a siding, to be carried in another train to Brookwood. This car was then put on the side track, and left with her in it, while the train hauling the car from which she had moved went on to Belle Ellen. If she went into this Brookwood car of her own motion, and without fault on the part of the

trainmen, in the mistaken belief that it, and not the car in which she had previously ridden, was to go on to Belle Ellen, and in consequence was left at Yolandy, the defendant is not liable for damages sustained by her in consequence of her not being carried to Belle Ellen. But if she made this change of cars, and, as a consequence, was left at Yolandy, and suffered injuries, at the instance of the conductor or flagman of the Belle Ellen train, the defendant was liable. The complaint alleges that either the conductor or the flagman told her that the car she came from Birmingham to Yolandy in was the Brookwood car, and that the next car ahead was the Belle Ellen car, and that either the conductor or the flagman thereupon directed her to take the car ahead to be carried to Belle Ellen, and that acting upon this information, and in accordance with this direction, she went into the car ahead, and with it—it proving to be the Brookwood car—was left at Yolandy. If she proved' that either the conductor or the flagman thus caused her to take the wrong car, and to be left, she was entitled to recover. The evidence for the plaintiff tended to show that both the conductor and the flagman separately and at different times gave her this information and direction. On behalf of the defendant, the flagman was examined as a witness, to the effect that he gave plaintiff no such information or direction nor had anything to do with the plaintiff's changing cars. The conductor was not examined, being dead. On this state of pleading, and proof, it was manifest error for the court to charge the jury that "unless they are reasonably satisfied that the conductor and flagman told plaintiff to get in the wrong car, and thus was left, then you must return a verdict for the defendant." Nor can it by any means be said that the charge was without injury to the plaintiff, especially in view of the fact that plaintiff's evidence as to what the conductor did was not controverted, while as to the flagman, it was directly contradicted. The jury, but for the instruction, might well have found for plaintiff on the conduct of the conductor, while not believing her evidence as to the conduct of the flagman.

15c

The case was unnecessarily cumbered up with additional counts and special pleas. The *gravamen* of the action is defendant's wrong in leaving plaintiff at Yolandy instead of carrying her to Belle Ellen. So far as the right to recover is concerned, it is immaterial whether the alleged wrongful act of the conductor or the flagman was negligently, inadvertantly, or mistakenly, wilfully, knowingly, or even maliciously, done; and it was not necessary for the complaint to employ any of those adverbs in characterizing the wrong. As bearing on the amount of recovery in such cases, it is competent—certainly where such is the averment—to prove that the wrong-doer acted wilfully or maliciously, or with circumstances of aggravation. And the defense in such case is simply a denial of the alleged wrong—the general issue. There is no place in such case for pleas of contributory negligence. If defendant's wrong had any causal connection with the result complained of, it is no consequence that plaintiff might have yet avoided the result by making other inquiry as to the proper car for her to take, or anything of that sort. She had a right to rely implicitly on what the trainmen told her in this connection, and to act accordingly.

As the case was developed on the evidence, the sole inquiry was whether she took the wrong car at the direction of the conductor or flagman, or of her own motion, in the mistaken belief—not induced by any fault of the trainmen—that it was the right car.

We discover no error in the rulings of the court on the admisibility of evidence. If, after the flagman had been examined as a witness, it had been proposed to show that the plaintiff was a witness in another case to prove misconduct on his part as a flagman, that fact in that connection would have been competent as tending to show his bias as a witness in this case; but we are not of opinion that the fact of plaintiff being such witness in another case, involving a charge of wrong against the conductor and the flagman, was competent here to prove that they wilfully or maliciously caused her to be marooned at Yolandy.

[Fulgham v. Carter.]

What we have said will suffice for the court's guidance on another trial, and we deem it unnecessary to discuss the rulings below on this trial in detail.

Reversed and remanded.

TYSON, SIMPSON and ANDERSON, J.J., concurring.