## J. J. WEEKS, Respondent, v. GREAT NORTHERN RAILWAY COMPANY, Appellant.

(8 A.L.R. 1178, 175 N. W. 726.)

**Carriers — damages to passengers for misinformation as to time of departure of trains — carrier liable for actual damage.**

1. Where a passenger sustains damages by reason of misinformation as to the time of the departure of trains, given by a carrier's employees, the carrier is liable for the actual damages sustained by the passenger proximately caused by reason of the misinformation.

**Carriers — misinformation as to departure of train not proximate cause of suffering incurred while driving across country.**

2. Where a passenger who has been misinformed as to the time of the

NOTE.—Authorities discussing the question of liability of carrier for giving misinformation to passenger as to running of train are collated in a note in 8 A.L.R. 1183, where it is held that where an employee of a railroad company misinforms a passenger as to the time of the departure of a train or of its arrival at destination, the carrier is liable for damages which are the direct result of the misinformation.

departure of a train, and as a result thereof has missed his train, procures an automobile and, equipped with inadequate clothing, drives across country during a cold, stormy night, and as a result suffers discomfort and inconvenience, he is not entitled to recover damages for discomfort and inconvenience endured during such trip, as the negligence or wrongful action of the carrier was not the proximate cause thereof.

Opinion filed November 13, 1919. Petition for rehearing filed December 9, 1919.

From a judgment of the District Court of Bottineau County, *Burr, J.,* defendant appeals.

Reversed and remanded for a new trial.

*Murphy & Toner,* for appellant.

The bulletining of this train on the day in question was not within the scope of the employment of the operator and has no legal effect in so far as the company is concerned. Kinnomen v. Great Northern, 34 N. D. 556.

Plaintiff had no right to rely on such late train not coming in ahead of time, even though so reported and even though he was a passenger, and defendant did not owe him in this case the extraordinary duties a carrier owes a passenger, and under such circumstances no recovery could be had. 59 Ill. App. 620.

"It is only in cases of moral wrong, recklessness, or malice that the exceptional rule of public policy which allows exemplary damages applies." Parker v. Ry. Co. 13 Hun, 319.

"There must be some element of malice, violence, or oppression to justify exemplary damages." Ry. Co. v. Wurl, 62 Ill. App. 381; Ry. Co. v. Carr, 71 Md. 135.

"Evil motive or intention must be shown." Hamilton v. Ry. Co. 53 N. Y. 25.

*John E. Martin,* for respondent.

A person who goes to the station of a railway company within a reasonable time prior to the hour set for the departure of a train, with the bona fide intention of taking passage thereon, and either by purchasing a ticket or in some other manner indicates such intention to the carrier, he is considered to be a passenger. 10 C. J. 613, § 1040; Dieckmann v. Chicago & N. W. R. Co. 121 N. W. 676.

"A common carrier must start at such time and place as he announces

to the public unless detained by accident or the elements, or in order to connect with carriers on other lines of travel." Comp. Laws 1913, § 6238.

A reasonable sum for loss of time, and a fair compensation for the inconvenience experienced by a passenger, are all proper elements of damages for which he can recover. Lilly v. St. Louis R. Co. 31 Okla. 521, 39 L.R.A.(N.S.) 663; Louisville etc., R. Co. v. Sanders, 61 So. 482; St. Louis etc. R. Co. v. Evans, 126 S. W. 1058.

PER CURIAM. On the morning of October 19, 1917, the plaintiff, who lived at Bottineau, went to Rugby on defendant's passenger train, intending to return to Bottineau on the afternoon train. Bottineau is located on a branch of the defendant's railway which connects with the main line at Rugby, and there is only one passenger train in each direction on each day. On October 19th the regular scheduled time for the departure of the train known as No. 213 from Rugby to Bottineau was at 4:15 P. M. At about 4 P. M., plaintiff, in company with one Thomas Hennessy, sheriff of Bottineau county, went to the defendant's depot at Rugby for the purpose of taking train No. 213 to Bottineau, but on examining a bulletin board in the depot they found that this train was marked to leave at 5:40 P. M. The plaintiff thereupon inquired at the ticket window, of the person in charge, if he was certain that the train would not leave before 5:40 P. M. and was answered in the affirmative. The plaintiff and Hennessy thereupon went up town. They returned to the depot about 5:30 P. M., at which time they were informed that the train had left at 4:50, or about fifty minutes ahead of the time formerly announced. Plaintiff was therefore compelled either to remain in Rugby until the next day, or else drive to Bottineau, —a distance of about 48 miles. The plaintiff and Hennessy engaged an autolivery, and made the trip to Bottineau that evening. They paid the driver $20. The plaintiff and Hennessy each paying one half thereof.

The evidence adduced by the plaintiff tended to show that there had been quite a severe snow storm a day or two before; that as a result the roads were in bad condition, and travel rendered difficult, and the telephone wires between Rugby and Bottineau broken down; that the night was cold, and that snow was falling to such an extent that it was

necessary for the driver to stop at times and clean off the windshield and lamps. in order to travel with safety. The plaintiff testified that he had on only a medium weight cloth overcoat, and that he became very cold on the trip to Bottineau. Hennessy testified that the weather was so cold that he would not make the trip until he obtained a fur coat. There is some conflict as to the length of time required to make the trip. The plaintiff testified that it took about three hours, while the driver of the automobile claimed the trip was made in about two hours.

The plaintiff was state's attorney of Bottineau county, and he testified that a preliminary examination had been set for hearing in a justice's court that evening at 7 o'clock, and that he was caused considerable worry on account of his inability to telephone the justice of the peace, and explain the reason of his failure to appear at the time set for the hearing.

The plaintiff claimed that he was damaged in the sum of $100, and made demand upon the defendant for payment. Payment was refused, and plaintiff brought this action, wherein he demanded judgment for $300 compensatory, and $300 exemplary, damages. The defendant denied all liability. The case was tried to a jury, which returned a verdict in plaintiff's favor for $175 compensatory damages; no exemplary damages were allowed. Defendant has appealed from the judgment.

The evidence adduced by the plaintiff shows that plaintiff was misinformed as to the time when train No. 213 would depart; that such misinformation was conveyed both by what was written on the bulletin board and by what was said by the person in charge of the ticket office, and that such misinformation caused plaintiff to miss the train. It is true the testimony does not show that the plaintiff had procured a ticket at the time the information was received by him, but it does show that he came to the depot for the purpose of becoming a passenger upon that train. There is also evidence to the effect that the plaintiff was known to the operator,—the person who wrote the statement on the bulletin board with respect to train No. 213,—and that plaintiff talked with that person on the day in question. We are of the opinion that the evidence considered as a whole justified the jury in finding that at the time the misinformation was given to the plaintiff he was in the position of a passenger. 10 C. J. p. 613, § 1040.

It is well settled that where a passenger sustains damages by reason of misinformation as to trains given by the carrier's employees, the carrier is liable for the actual damages sustained by the passenger by reason of such misdirection. Michie, Carr. §§ 2252, 2253; Robertson v. Louisville & N. R. Co. 142 Ala. 216, 37 So. 831; Louisville & N. R. Co. v. Cannon, 158 Ala. 453, 48 So. 64; Wilcox v. Southern R. Co. 91 S. C. 71, 74 S. E. 122.

The defendant contends that the verdict is excessive. We are of the opinion that this point is well taken. In his complaint, plaintiff avers: "That the defendant on said 19th day of October, 1917, maliciously, unlawfully, and falsely reported that said train No. 213 would leave Rugby at 5:30 P. M., and thereafter caused said train to depart at 4:50 P. M., and that by reason thereof plaintiff was put to great annoyance, worry, and delay, and was compelled to travel by livery from the said city of Rugby to Bottineau during the nighttime, over roads that were almost impassable on account of mud and snow, the said drive occupying about three hours and causing plaintiff considerable suffering on account of exposure to cold and a snow storm prevailing at said time. That on said 9th day of October, 1917, plaintiff as state's attorney of Bottineau county, represented the state of North Dakota in an action then pending in justice court for Bottineau county, in which action hearing was set for 7 o'clock P. M., on the said 19th day of October, 1917, and that plaintiff was unable to communicate with the said justice of the peace by telephone from Rugby on account of the fact that said telephone lines were down and out of service at said time, and that, on account of said action pending and other business, plaintiff was compelled to travel by livery from Rugby to Bottineau in the evening and night of October 19, 1917, but was unable to reach Bottineau in time for said hearing in justice court, and was unable to reach Bottineau in time to attend to other matters of business requiring plaintiff's attention, and that by reason of all these facts, plaintiff has suffered damages in the sum of $100."

This is the only allegation in the complaint alleging either the facts as to, or the amount of, damages. In his testimony the plaintiff admitted his inability to specify any damage by reason of the loss of time. And upon this feature of the case, the trial court expressly instructed the jury as follows: "In finding the actual damages you

cannot allow for loss of time, as there is no proof of the value of any time lost. Find what actual damages the plaintiff suffered in money, actually and necessarily spent, and the amount which would fairly compensate the plaintiff for loss and harm suffered in personal property."

The defendant was liable to the plaintiff for the detriment which was *proximately* caused by the misinformation which its employees gave to him. Comp. Laws 1913, § 7165. So far as the discomfort which plaintiff suffered on the trip from Rugby to Bottineau is concerned, this was, according to his own testimony, due to inadequate clothing. Neither Mr. Hennessy nor the driver of the automobile claimed that they suffered any particular discomfort. Manifestly the defendant cannot be charged with any detriment which plaintiff brought upon himself. In Michie on Carriers, it is said: "In the absence of peculiar circumstances, a passenger is entitled only to reasonable compensation for the damages he has sustained by reason of failure to transport him to his destination promptly. The carrier in such case is liable for the damages actually sustained by the passenger as the direct and necessary result of its negligence. This includes the value of the time lost by the passenger, and the reasonable expenses to which he has been put because of the delay. But the passenger is not entitled to actual damages, unless he shows some pecuniary injury or personal injury, and is not entitled to damages for inconvenience, loss of time, or fatigue, unless some pecuniary damage or personal loss has resulted therefrom. And no damages can be recovered for physical injuries which are not the proximate result of the carrier's negligence." Vol. 3, § 3386. See also International & G. N. R. Co. v. Addison, 100 Tex. 240, 8 L.R.A.(N.S.) 880, 97 S. W. 1037; Ingraham v. Pullman Co. 190 Mass. 33, 2 L.R.A.(N.S.) 1087, 76 N. E. 237, 19 Am. Neg. Rep. 292; Stephens v. Oklahoma City R. Co. 28 Okla. 340, 33 L.R.A.(N.S.) 1007, 114 Pac. 611.

The verdict which the plaintiff recovered in this case was clearly in excess of what he was entitled to recover either under his pleading or his proof. The judgment must therefore be reversed and the cause remanded for a new trial.

In view of a new trial we deem it necessary to say that under the evidence in this case there was no occasion to submit to the jury the question of exemplary damages. Exemplary damages may be allowed

in an action for the breach of an obligation not arising from contract, only "when the defendant has been guilty of oppression, fraud, or malice, actual or presumed." Comp. Laws 1913, § 7145. In the case at bar, the undisputed evidence shows that at the time the plaintiff was informed by the employees of the defendant that train No. 213 would depart at 5 :40 P. M. that that information was correct. The departure of the train before the time stated was occasioned by a subsequent change of orders by the train despatcher. It appears that train No. 213 ordinarily made connections with train No. 9 on the main line of the defendant's railway. On the day in question train No. 9 was late, and the departure of train No. 213 was delayed in order to make the proper connection with train No. 9. About 4 :50 P. M. train No. 9 was reported much later, and the train despatcher thereupon rescinded the former order relating to the departure of train No. 213, and fixed the time for the departure of that train at 4 :50 P. M. After this order was received the defendant's employees in the depot at Rugby endeavored to communicate the change to the various persons intending to take passage on that train. They even went to the extent of telephoning the hotels and poolrooms. Manifestly there is no basis under this evidence for a finding that the defendant was guilty of oppression, fraud, or malice.

Judgment reversed and the cause remanded for a new trial.

CHRISTIANSON, Ch. J., and BRONSON and BIRDZELL, JJ., concur.

ROBINSON, J. I think the action should be dismissed.

GRACE, J. (dissenting). This case was, upon the issues formed, tried to a jury. The jury, under all the facts and circumstances of the case submitted to it, after due deliberation, returned a verdict in favor of the plaintiff for $175. The verdict is not excessive; there is nothing to show passion or prejudice. I dissent from the result arrived at by the majority opinion.

## On Petition for Rehearing.

PER CURIAM. In a petition for rehearing it has been suggested that the court in its opinion overlooked § 7165, Comp. Laws 1913, which reads: "For the breach of an obligation not arising from contract

the measure of damages, except when otherwise expressly provided by this Code, is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not." This section was not overlooked. On the contrary it was cited in the former opinion. We were of the opinion then, and are of the opinion now, that the acts of the defendant were not the proximate cause of whatever inconvenience or suffering the plaintiff endured on the automobile trip from Rugby to Bottineau. According to his own testimony such discomfort was due to his own, and not to defendant's acts.

Neither did we overlook §§ 6238, 7145, and 10,360, Comp. Laws 1913, in holding that the case did not present one for the allowance of exemplary damages. Giving full force and effect to these sections, the facts still remain as stated in the former opinion. And they furnish no basis for a finding that defendant was guilty of oppression, fraud, or malice, actual or presumed. And there could be no allowance of exemplary damages unless there is evidence from which reasonable men, in the exercise of judgment and reason, could so find. That is the rule announced in the statute. See § 7145, supra.

Rehearing denied.