CASE 75.—ACTION BY JOHN WATSON AGAINST THE KEN-
TUCKY & INDIANA BRIDGE & RAILROAD COM-
PANY AND OTHERS.—March 18, 1910.

# Watson v. Ky. and Ind. Bridge and Ry Co., &c.

Appeal from Jefferson Circuit Court (Common
Pleas Branch, First Division).

EMMET FIELD, Judge.

From the judgment plaintiff appeals.—Reversed as
to one defendant and affirmed as to the others.

1.  Explosives—Explosion of Gasoline—Proximate Cause—Ques-
    tion for Jury.—Evidence in an action for damages caused by
    an explosion of gas generated from gasoline running from
    the broken valve of a derailed tank car, held to present a
    question for the jury as to the proximate cause of plain-
    tiff's injuries.

2.  Explosives—Explosion of Gasoline—Proximate Cause.—If an
    explosion of gas generated in a city street from gasoline run-
    ning from a broken valve of a derailed tank car resulted from
    a person in the street inadvertently or negligently striking
    or throwing a match therein, negligence of the railroad com-
    pany as to the presence of the gas in the street was the effi-
    cient cause of the explosion, and it is liable for the result-
    ing damages, but if the person lighting the match did it ma-
    liciously to cause the explosion, his act, and not the pri-
    mary negligence of the railroad company, was the efficient
    or proximate cause, and it is not liable.

3.  Negligence—Proximate Cause—Effect of Concurrent Cause
    or Intervening Act.—The mere fact that the concurrent
    cause or intervening act was unforeseen will not relieve from
    liability one guilty of primary negligence, but if it is some-
    thing so unexpected or extraordinary that he could not, or
    ought not to, have anticipated it, he will not be liable, and
    he is certainly not bound to anticipate criminal acts of
    others inflicting damage, and so is not liable therefor.

4.  Railroads—Accident to Tank Car—Explosion of Gas—Negligence—Evidence.—Evidence in an action for damages caused by an explosion of gas, generated from gasoline running from the broken valve of a derailed tank car, held to show that the car was not defective, but that its derailment broke or injured it so as to allow the oil to escape, so that a defendant tank line company was not responsible for the accident.

5.  Witnesses—Contradiction.—Where, in an action for damages caused by an explosion of gas in a street, generated from gasoline running from a derailed tank car, a witness who produced the explosion by lighting a match testified that his act was not malicious, there was no error in allowing to be read to the jury for the purpose of contradicting him an indictment against him for burning a stable, or the judgment showing what disposition was made of the case, the stable having been destroyed by the same explosion, and the plea to the indictment being a confession that he unlawfully caused it to be burned, though its destruction resulted from his lighting of a match.

6.  Witnesses—Contradiction—Explanation of Contradictory Evidence.—Where, for the purpose of contradicting a witness who testified that his act in lighting a match which produced an explosion of gas was not malicious, the court allowed to be read to the jury an indictment against him for burning a stable and the judgment showing the disposition made of the case, the stable having been destroyed by the same explosion, and his plea to the indictment being a confession that he unlawfully caused it to be burned though its destruction resulted from his lighting a match, the court erred in refusing to permit him to testify as to the circumstances under which the plea was made, and that, in entering the plea of guilty as indicated and submitting to the imposition of a fine, he acted on the advice of counsel.

7.  Witnesses—Contradiction.—In an action for damages caused by an explosion of gas which was produced by a witness lighting a match, testimony showing his threat to cause the explosion was properly admitted to contradict his previous denial thereof.

8.  Trial—Reception of Evidence—Impeaching Credibility of Witness.—Where evidence is admissible only to affect the credibility of a witness, the court should so instruct.

BRADFORD WEBSTER, ARTHUR C. POPHAM, CHATTERSON & BLITZ, O'NEAL & O'NEAL, B. H. YOUNG, C. W. HUGGINS and J. MORGAN CHINN for appellant.

DAVID W. BAIRD, E. P. HUMPHREY, HUMPHREY, DAVIS & HUMPHREY and KOHN, BAIRD, SLOSS & KOHN for appellees.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

This action was instituted by the appellant, John Watson, in the court below, against the appellees, Kentucky & Indiana Bridge & Railroad Company, hereinafter called the Bridge & Railroad Company, the Southern Railway Company, the Southern Railway Company in Kentucky, and the Union Tank Line Company, to recover $20,000 damages for injuries sustained to his person on the night of June 14, 1907, from an explosion of gas caused, as alleged, by the negligence of the appellees. It was, in substance, alleged in the petition as amended that while a tank car, owned by the appellee Union Tank Line Company, and filled with a highly explosive substance, known as gasoline, was being transported through a populous section of the city of Louisville over the roadbed of the appellee Bridge & Railroad Company, it was derailed and its valve broken, thereby causing all the gasoline to escape and flow in large quantities on the street and into the gutters; that from the gasoline thus flowing and standing in pools upon the street and gutters there arose and spread over the neighborhood of the place of derailment and into the houses of the residents thereof, great quantities of highly explosive and combustible gas which, three hours after the derailment of the tank car, exploded with force from contact with a lighted match thrown on the street by one Chas. Duerr, who claimed to have used it in igniting a cigar; that the explosion threw appellant from his bed and almost demolished

his house, from the ruins of which he was taken unconscious and bleeding with a fractured jaw and one cheek nearly torn from his face. It was further charged in the petition that the explosion and appellant's consequent injuries resulted from the negligence of all the appellees; the negligence of the Union Tank Line Company lying, as alleged, in its failure to provide a tank car with proper trucks and main valve; that of the Bridge & Railroad Company in failing to maintain in a safe condition the roadbed and track at the point of derailment; in permitting the tank car to remain at the place of derailment in its wrecked condition an unreasonable time, and in allowing ignorant and careless meddling on the part of their servants with the main valve of the tank after it was broken, whereby the flow of the gasoline from the tank was increased instead of diminished. All the material averments of the petition were specifically denied by the answer of the appellees. As on the trial the proof failed to show that either the Southern Railway Company, or the Southern Railway Company in Kentucky, was charged with the duty of maintaining the roadbed or tracks at the place of derailment or that they had handled or had anything to do with the tank car in question, appellant, at the conclusion of all the evidence, dismissed the action without prejudice as to those two appellees. At the conclusion of appellant's evidence, the appellees Bridge & Railroad Company and Union Tank Line Company moved the court peremptorily to instruct the jury to find for them. The motion was overruled, but being renewed by appellees after the introduction of all the evidence, it was sustained, and the jury, in obedience to the peremptory instruction then given by the court, returned a verdict in behalf

of appellees, upon which judgment was entered in their favor for costs. Appellant being dissatisfied with that judgment and the refusal of the circuit court to grant him a new trial, has appealed.

The main question involved in this appeal is, whether or not the trial court erred in giving the peremptory instruction. Its decision will require consideration of the evidence. It is conceded that the tank car belonged to appellee Union Tank Line Company, and the evidence conclusively shows that it was loaded at Franklin, Pa., with gasoline. In reaching the consignee at Louisville, it passed over several lines of railroad, but was delivered by the Baltimore Ohio & Southwestern Railroad to the appellee Bridge & Railroad Company, in the city of Louisville, at what is known as the Youngtown yards. The latter company was at the time of the accident hauling the tank car, attached to one of its trains, from its railroad yards near the Ohio river to the place of business of the consignee in the southern part of the city. The derailment of the car occurred about 7:30 o'clock in the evening between Walnut and Madison streets. The gasoline began at once to escape from the tank and continued to do so for several hours until the tank was emptied. By the derailing of the car the discharge pipe beneath the tank provided for emptying it of its contents, was broken, as were the appliances for opening and closing the valves by which the contents were allowed to leave, or prevented from leaving the tank. The gasoline in escaping from the tank ran down a gutter or drain in the street and along appellee Bridge & Railroad Company's right of way, several hundred feet to a sewer, into which it flowed. The employes of appellee Bridge & Railroad Company connected with the train in question, and

later the wrecking crew called to their assistance, seemed to be unable to stop the escape of gasoline from the tank, or at any rate did not do so. From the gasoline, vapor or gas of a highly combustible character arose and permeated the atmosphere a distance of 500 or 600 feet from the place of derailment. About 11:30 o'clock, Charles Duerr, who with Charles Miller and two young women, designated in the record as the Warner girls, was standing in front of the Warner residence on Madison street, a square west of the place of the accident, struck a match which he threw to the ground, and this match in its descent came in contact with the gas generated by the flowing gasoline, thereby causing the explosion by which appellant was injured.

There is no disagreement between the parties as to the facts thus far stated, but there are several issues of fact yet to be considered with respect to which there is sharp controversy. One of the points of difference is as to the condition of the railroad track where the tank car was derailed. The evidence of appellant conduced to prove that it was defective and unsafe. Indeed, several witnesses introduced by him testified that the derailment of the car was caused by a low or loose joint in the rails which sank under the wheels of the car to such an extent as to throw it from the track, in leaving which it broke one of the rails; that the low joint was produced by the rottenness of the ties supporting it, want of ballast between the ties, and the flat or swampy condition of the roadbed at the place of derailment. According to the further statements of the witnesses in question the bad condition of the roadbed and track, as described, had continued a long time, and must have been known to those charged with the duty of keeping it

in repair. On the other hand, a number of witnesses introduced by appellees were of opinion that the roadbed and track were in a reasonably safe condition and the testimony of some of them conduced to prove that there was no low joint in the rail and that the car left the track 26 feet before reaching what appellant's witnesses called the low joint, and that the derailment of the car was an unavoidable casualty or accident which could not, by the exercise of ordinary care, have been prevented. But considering the evidence as a whole, it cannot be denied that much of it was to the effect that the derailment was caused by the negligence of the appellee Bridge & Railroad Company in failing to keep its roadbed and track in repair. We find a much greater contrariety of evidence as to appellant's contention that the employes of the appellee Bridge & Railroad Company were negligent in handling the tank car after the derailment. It is apparent from the testimony of all the witnesses that the discharge pipe under the tank and the appliances for operating the tank valve were broken by the derailment of the car, and that the gasoline immediately began to escape. It was, however, stated by appellant's witnesses that the escaping gasoline was at first but a small stream, but that appellee Bridge & Railroad Company's servants in charge of the derailed car by their negligence in handling it, increased the flow of gasoline therefrom. This they stated was done by their opening a manhole on the top of the tank, and also by completely opening the valve at the bottom thereof in the effort to close it; that by thus opening the valve below and thereby removing the partial obstruction to the escape of the gasoline, the pressure of the air coming through the manhole above facilitat-

ed its flow, and such increase of the flow created the greater quantity of gas in the surrounding atmosphere, which, in turn, increased the probability of an explosion, and added to the danger of all persons within the radius of its influence.

As already intimated, the testimony of appellee's witnesses radically differed from that of appellant's as to what was done to stop the escape of the gasoline after the derailment of the car. They all denied that they caused, or that there was, any increase in the flow of gasoline from the tank, and claimed that they did everything in their power to stop the leak; using for that purpose waste, mud, and other appliances after they discovered that the discharge pipe was broken, the valves open, and that the appliances for closing the valve would not perform their work. They further testified that their attempts to stop the leak were attended by great risk and danger to their lives; that the bad odor of the gasoline was nauseating, the darkness interfered with their vision and movements, and the use of lanterns or torches near enough to the car to obtain a good view of the situation, would inevitably have resulted in an explosion of the gas escaping in great volume from the flowing gasoline. Whether the jury, if the case had been submitted to them, would have decided this issue of fact in accordance with the testimony of appellant's witnesses cannot be known, but it is manifest that the issue was one to be determined by the jury if the case should have gone to them at all. Another issue of fact was as to whether the servants of appellee Bridge & Railroad Company gave residents near the place of the accident and persons traveling Madison street at that point warning against the dangers from the gas.

Appellant, and at least five other witnesses intro-
duced in his behalf, testified that they lived, or hap-
pened to be near the place of the accident and saw
or felt the force of the explosion, but that they re-
ceived neither notice nor warning of the presence of
gas. or that there was danger of an explosion. Mrs.
Kern, one of the witnesses, testified that she had
lights in her house down to the time of the explo-
sion, but that she was not warned to put them out.
Appellees' testimony tended to show that the rail-
road employes in charge of the wrecked car sent
word to the train despatcher to keep trains away from
the place of the accident: that they stationed guards
around the place to keep spectators at a safe distance
and to prevent lights from being brought into the
gaseous atmosphere, and that the many people who
went to the place of the accident were warned gen-
erally of the  danger to be apprehended from the
presence of the gas. It will readily be seen that the
testimony upon this issue was also conflicting.

There is no contrariety of proof as to the fact that
Charles Duerr lighted the match that caused the ex-
plosion. Indeed, the act was admitted by him, but he
testified that when it was done he and Miller, a com-
panion, were standing on Madison street in front of
the Warner residence a square from the derailed
car, talking with the two Warner girls, the four hav-
ing just returned from Shawnee Park; that he took
a cigar and match from his pockets, struck a light
from the match, and ignited the cigar; that the ex-
plosion followed before the match reached the ground
and that he was  knocked down by  the  explosion.
He further testified that at the time of lighting the
match he had just returned from Shawnee Park and
knew nothing of the derailment of the tank car, or

of the existence of the gas arising from the escaping gasoline, and that he did not intend to cause the explosion, nor did he know that the lighting of the match would cause it.    Duerr was corroborated by Miller and one of the Warner girls, and Mrs. Kern testified that she saw the two young men standing on Madison street and talking with the Warner girls, she being at her gate near them; that although she saw Duerr when he struck the match, she did not see him drop it, but saw that the explosion immediately followed the lighting of the   match.    W. G. Schnepp, who was near Duerr and his companions, said he did not see the match thrown, but heard a woman call out at that time for everybody to run, as some one had thrown a match.    R. W. Polly, a witness for appellees, testified that he was across the street and within 60 feet of Duerr, Miller, and the Warner girls at the time of the explosion; that there was an electric light burning just above where they were standing and he could see them plainly; that neither of the young men had a cigar or pipe; that he saw Duerr strike a match against the fence and throw it into the plainly visible vapor arising from the   gasoline   and that the explosion   immediately followed.

Appellees were permitted to prove that Duerr, who had been a telegraph operator in the employ of the appellee Bridge & Railroad Company, was on the morning of the day of the explosion discharged from its service, and that 20 minutes before the explosion Duerr remarked to his companion, in the hearing of Giacometti and Darnall, "Let us go and set the damn thing on fire." The foundation for the introduction of the testimony of Giacometti and Darnall was laid by first obtaining from Duerr a denial that he had

made the statement. Appellees introduced and had read to the jury, an indictment against Duerr for feloniously burning a stable, and also a judgment showing that he was allowed, after waiving a trial by jury, to plead guilty to a misdemeanor, viz., the offense of unlawfully destroying the property of another, for which he was fined by the court $350. The peremptory instruction was granted by the trial court upon the theory that though the Bridge & Railroad Company may have been guilty of negligence in permitting the tank car to be derailed, such negligence was not the proximate cause of the appellant's injuries, but that the act of Duerr in lighting and throwing the match, which the court declared was done purposely and in a spirit of wantonness, malice, or mischief, was the proximate cause thereof. We are clearly of opinion that the peremptory instruction, in so far as it required the jury to find for the appelllee Bridge & Railroad Company was unauthorized.

There was, as previously indicated, evidence from which the jury might have found the appellee Bridge & Railroad Company guilty of negligence in failing to keep in proper repair and condition its roadbed and track at the place where the tank car was derailed, and that such failure caused the derailment resulting in the escape from the tank of the gasoline, contact of the gas from which with the match lighted by Duerr caused the explosion. There was also some evidence, very slight, it is true, tending to support appellant's contentions that the employes of the appellee Bridge & Railroad Company were negligent in handling the car after its derailment, and in failing to sufficiently warn residents and others near the place of the accident against the dangers to be apprehend-

ed from the presence of the gas produced by the escaping gasoline. "

The lighting of the match by Duerr having resulted in the explosion, the question is, was that act merely a contributing cause, or the efficient and, therefore, proximate cause of appellant's injuries? The question of proximate cause is a question for the jury." In holding that Duerr in lighting or throwing the match acted maliciously or with intent to cause the explosion, the trial court invaded the province of the jury." There was, it is true, evidence tending to prove that the act was wanton or malicious, but also evidence conducing to prove that it was inadvertently or negligently done by Duerr. "It was therefore for the jury and not the court to determine from all the evidence whether the lighting of the match was done by Duerr inadvertently or negligently, or whether it was a wanton and malicious act." As said in Milwaukee Railroad Co. v. Kellogg, 94 U. S. 469, 24 L. 256: "The true rule is that what is the proximate cause of the injury is ordinarily a question for the jury. It is not a question of science or legal knowledge. It is to be determined as a fact in view of the circumstances of fact attending it." Snydor v. Arnold, 122 Ky. 557, 92 S. W. 289, 28 Ky. Law Rep. 1252. In Thompson on Negligence, section 161, it is said: "On principle, the rule must be here, as in other cases, that, before the judge can take the question away from the jury and determine it himself, the facts must not only be undisputed, but the inference to be drawn from those facts must be such that fair-minded men ought not to differ about them. It must be concluded that this is so, when it is considered that proximate cause is a cause which would probably, according to the experience of mankind, lead to the

event which happened, and that remote cause is a
cause which would not, according to such experience,
lead to such an event.  Now, whether a given cause
will probably lead to a given result is plainly to be
determined by the average experience of mankind;
that is, by a jury rather than by a legal scholar on
the bench.''  No better statement of the law of prox-
imate cause can be given than is found in 21 Am. &
Eng. Ency. of Law (2d Ed.) 490, quoted with ap-
proval in Louisville Home Telephone Company v.
Gasper, 123 Ky. 128, 93 S. W. 1057, 29 Ky. Law Rep.
578, 9 L. R. A. (N. S.) 548: ''It is well settled that
the mere fact that there have been intervening causes
between the defendant's negligence and the plain-
tiff's injuries is not sufficient in law to relieve the
former from liability; that is to say, the plaintiff's
injuries may yet be natural and proximate in law,
although between the defendant's negligence and the
injuries other causes or conditions, or agencies, may
have operated, and, when this is the case, the de-
fendant is liable.  So the defendant is clearly re-
sponsible where the intervening causes, acts, or con-
ditions were set in motion by his earlier negligence,
or naturally induced by such wrongful act or omis-
sion, or even, it is generally held, if the intervening
acts or conditions were of a nature the happening of
which was reasonably to have been anticipated,
though they may have been acts of the plaintiff him-
self.  An act or omission may yet be negligent and
of a nature to charge a defendant with liability,
although no injuries would have been sustained but
for some intervening cause, if the occurrence of the
latter might have been anticipated.  *  *  *  A
proximate cause is that cause which naturally led
to and which might have been expected to produce

the result.  *  *  *  The connection of cause and effect must be established.    It is also a principle well established that when an injury is caused by two causes concurring to produce the result, for one of which the defendant is responsible, and not for the other, the defendant cannot escape the responsibility. One is liable for an injury caused by the concurring negligence of himself and another to the same extent as for one caused entirely by his own negligence.'' Black's Law and Practice, section 21; Thompson on Negligence, sections 47-52; Whitaker's Smith on Negligence, 27-; 29 Cyc. 488-502.

If the presence on Madison street in the city of Louisville of the great volume of loose gas that arose from the escaping gasoline was caused by the negligence of the appellee Bridge & Railroad Company, it seems to us that the probable consequences of its coming in contact with fire and causing an explosion was too plain a proposition to admit of doubt.    Indeed, it was most probable that some one would strike a match to light a cigar or for other purposes in the midst of the gas.    In our opinion, therefore, the act of one lighting and throwing a match under such circumstances cannot be said to be the efficient cause of the explosion.    It did not of itself produce the explosion, nor could it have done so without the assistance and   contribution resulting from the primary negligence, if there was such negligence, on the part of the appellee Bridge & Railroad Company in furnishing the presence of the gas in the street.    This conclusion, however, rests upon the theory that Duerr inadvertently or negligently lighted and threw the match in the gas.    This view of the case is sustained by the following leading cases, all decided by this court:  Snydor v. Arnold, 122 Ky. 557, 92 S. W. 289,

28 Ky. Law Rep. 1252; Louisville Gas Co. v. Gutenkunt, 82 Ky. 432; Whitman-McNamara Tobacco Co. v. Warren, 66 S. W. 609, 23 Ky. Law Rep. 2120; Louisville Home Telephone Co. v. Gasper, 123 Ky. 128, 93 S. W. 1057, 29 Ky. Law Rep. 578. 9 L. R. A. (N. S.) 548.   The cases supra are, indeed. in point of fact and principle so analogous to the case under consideration as to completely control its determination, and to render further discussion of it unnecessary.

If, however, the act of Duerr in lighting the match and throwing it into the vapor or gas arising from the gasoline was malicious, and done for the purpose of causing the explosion, we do not think appellees would be responsible, for while the appellee Bridge & Railroad Company's negligence may have been the efficient cause of the presence of the gas in the street, and it should have understood enough of the consequences thereof to have foreseen that an explosion was likely to result from the inadvertent or negligent lighting of a match by some person who was ignorant of the presence of the gas or of the effect of lighting or throwing a match in it, it could not have foreseen or deemed it probable that one would maliciously or wantonly do such an act for the evil purpose of producing the explosion.   Therefore, if the act of Duerr was malicious, we quite agree with the trial court that it was one which the appellees could not reasonably have anticipated or guarded against, and in such case the act of Duerr, and not the primary negligence of the appellee Bridge & Railroad Company, in any of the particulars charged, was the efficient or proximate cause of appellant's injuries.   The mere fact that the concurrent cause or intervening act was unforeseen will not relieve the defendant guilty

of the primary negligence from liability, but if the
intervening agency is something so unexpected or
extraordinary as that he could not or ought not to
have anticipated it, he will not be liable and certainly
he is not bound to  anticipate the criminal acts of
others by which damage is inflicted, and hence is not
liable therefor.  29 Cyc. 501-512; Sofield v. Sommers,
9 Bcn. 526, 22 Fed. Cas. 769, Cas. No. 13,157; An-
drews v. Kinsel, 114 Ga. 390, 40 S. E. 300. 88 An. St.
Rep. 25.

The record shows no cause of action whatever
against the Union Tank Line Company.  The only
complaint against it is that the tank car was defective.
The testimony conclusively shows that the car was
inspected at Franklin, Pa., before its delivery to the
railroad company there for transportation to Louis-
ville, and was found to be in good condition; that it
remained in such condition on the way to Louisville
and such was its condition when delivered to appellee
Bridge and Railroad Company, at Louisville. On the
other hand, the appellant introduced no evidence to
show that the car was not properly constructed, that
any of its appliances were defective, or that it was
leaking prior to the time of the accident.  This being
true, it is patent that the derailment of the car broke
or injured it to such an extent as to cause the escape
of the oil, and with that accident the appellee, Union
Tank Line Company, had nothing to do and was in
no sense responsible therefor.  The peremptory in-
struction, therefore, so far as the appellee, Union
Tank Line Company, was concerned, was proper.

We do not think the court erred in allowing the
indictment against Duerr for burning the stable, or
the judgment showing what disposition was made of
the case, to be read to the jury.  The stable was de-

stroyed by the gas explosion. The plea of Duerr to the indictment was a confession that he unlawfully caused it to be burned, although its destruction resulted from his lighting of the match. The record, therefore, tended to contradict his testimony in this case that his act in producing the explosion was not malicious. We are of opinion, however, that the trial court erred in refusing to permit Duerr to testify as to the circumstances under which the plea was made and the trial had, and that in entering the plea of guilty as indicated, and submitting to the imposition of the fine, he acted upon the advice of his counsel.

We also think that the testimony of Giacometti and Darnall showing the threat of Duerr to cause the explosion was properly admitted for the purpose of contradicting Duerr, who had previously denied making the threat. But the testimony, as well as that furnished by the indictment and judgment, should have been considered by the jury, only for the purpose of affecting Duerr's credibility as a witness, and the court should have so told the jury.

For the reasons indicated, the judgment is affirmed as to the Union Tank Line Company, but reversed as to the Bridge & Railroad Company, and cause remanded for a new trial consistent with the opinion.

On petition for rehearing, June 17, 1910.

SETTLE, J. The petition for appellees asks a withdrawal of so much of the opinion as declares the statements of Duerr, made in the hearing of Giacometti and Darnell just before the explosion, and the evidence furnished by the indictment against him and judgment thereon, were competent only for the purpose of affecting his credibility as a witness, and

that the court hold it competent as substantive evidence.

Upon reconsideration of the matter, we have reached the conclusion that the testimony of Giacometti and Darnell as to the declarations or threats made by Duerr immediately before the explosion should be admitted as substantive evidence conducing to prove what his motive was in lighting and throwing the match into the gas. But as the indictment against him was returned, and his conviction thereunder occurred, after the explosion, we adhere to the conclusion expressed in the opinion that the evidence furnished by them is competent only for the purpose of affecting Duerr's credibility as a witness, as explained in the opinion.

The opinion is modified to the extent indicated, but the petition in other respects is overruled.