The SEELBACH, INC., et al., Appellants,

v.

Gail Elizabeth CADICK, An infant who sues by her father and next friend, Denby E. Cadick, Appellee.

Gail Elizabeth CADICK, An infant suing by her father and next friend, Denby E. Cadick, Appellant,

v.

PIEDMONT AVIATION, INC., and Sheraton-Midcontinent Corporation, Appellees.

Court of Appeals of Kentucky.

July 1, 1966.

Rehearing Denied Sept. 23, 1966.

Joseph E. Stopher, A. J. Deindoerfer, Boehl, Stopher, Graves & Deindoerfer, Louisville, for Seelbach, Inc., Oscar G. Mc-Donald, and Eppley Hotels Co.

John S. Greenebaum, Louisville, Greene-baum, Barnett, Wood & Doll, Louisville, of counsel, for Sheraton-Midcontinent Corporation.

Hogan, Taylor, Denzer & Bennett, John L. Bennett, Louisville, for Piedmont Aviation, Inc.

Joe G. Leibson, Louisville, Gerald Kirven, Louisville, Leibson, Leibson & Leibson, Middleton, Seelbach, Wolford, Willis & Cochran, Louisville, of counsel, for Gail Cadick.

CLAY, Commissioner.

Gail Cadick, an infant, was awarded $56,500 by a jury against The Seelbach Hotel, and other parties, for personal injuries sustained in a hotel room when she was eight months old. The parties against whom judgment was entered seek reversal on several grounds, and she appeals from so much of the judgment as summarily dismissed her claim against two other defendants.

During November 1951, Gail accompanied her parents on an airplane flight, scheduled by Piedmont Aviation, Inc. The flight was cancelled in Louisville and her father received a voucher from Piedmont's reservations clerk authorizing The Seelbach Hotel to furnish the Cadicks accommodations for the night at the expense of Piedmont. The family thereupon checked into the hotel. Mr. Cadick testified he requested a baby bed for Gail but was told that the hotel did not have one available.

The family was admitted to a room containing two double beds. The parents pushed one of the beds against the outer wall and attempted to enclose the child's sleeping place with chairs, pillows and luggage. She was of an age when she could crawl, sit up, and pull up in a crib or playpen.

The bed did not fit flush with the outer wall its entire length because, near the foot, there was an opening created by a projection of the wall near a covered radiator. In this open area (approximately one foot long and eight inches wide) was a hot radiator pipe just above floor level. The parents placed on the bed near this opening a light travel case.

Gail was put in the middle of this bed near the headboard and went to sleep. About 1 a. m she either crawled or fell off the bed into the opening. Her neck, shoulder and the lower right side of her face came in contact with the hot pipe, causing severe burns. Her claim is based on negligence in failing to furnish reasonable accommodations. The court gave the following instruction, to which no party objected:

"It was the duty of the defendants, the Seelbach Inc. and Oscar G. McDonald, in the operation of the hotel, to use ordinary care to provide the plaintiff as an occupant and guest thereof with sleeping accommodations reasonably suitable for the purpose for which they were intended, and if you shall believe from the evidence in this case that the defendants negligently failed in said duty, and by reason of their failure, if any, and as a direct and proximate result thereof, the plaintiff was thereby caused to fall and received the injuries of which you have heard evidence, then the law is for the plaintiff and you will so find. But unless you so believe the law is for the defendants and you will so find."

While this instruction broadly covers the law of the case, the more specific duty owed to an infant is thus stated in 29 Am.Jur.2d, Innkeepers, section 58 (page 46):

"With regard to the duty of an innkeeper to a minor child guest, in distinction from his duty to an adult, it has been said that when a child is accepted as a guest, the experience and the natural tendencies of such a child become a part of the situation and must be considered by the innkeeper; that extraordinary care may be required of innkeepers in the protection of infants too young to take care of themselves. This does not mean that the innkeeper becomes the nurse of the child, or assumes its control when accompanied by its parents, but only that he is bound to consider *whether his premises, though safe enough for an*

*adult, present any reasonably avoidable dangers to the child guest."* (Emphasis added.)

This language was taken almost verbatim from Baker v. Dallas Hotel Co., 5 Cir., 73 F.2d 825, 827, which case has many similarities with the one before us.

The parties against whom the judgment was rendered (whom we will hereafter designate appellants), while conceding the duty to furnish reasonable accommodations, vigorously contend they were entitled to a directed verdict because they breached no duty owed this child. They seek to narrow the issue to the question of whether the hotel was required, in the exercise of ordinary care, to furnish a baby bed or crib. The issue cannot be so restricted under the facts of this case. Before examining another significant factor which vitally affects the question of negligence in the furnishing of accommodations, we will consider the baby bed question.

It is stated in 29 Am.Jur.2d, Innkeepers, section 67 (page 55) that the hotel owes its guest a "duty to provide articles of furniture which may be used by them in the ordinary and reasonable way without danger". It is common knowledge that a double bed is not the type of furniture generally utilized as a sleeping place for very young infants able to move about. The evidence establishes that the hotel recognized this.

The general manager of the hotel at the time of the accident testified that the hotel had 36 baby beds available and that "these cribs were always a thing foremost in our minds". The room clerk who registered the Cadicks testified that there was no substitute for a crib. The executive assistant manager stated that "according to the rules and regulations" the room clerks were instructed to furnish a crib upon request if one was available. He also testified that proper accommodations for an infant of this age meant furnishing a baby bed if one was requested, and that *he did not know of an incident when the hotel did not have*

*plenty of cribs available to accommodate infants.*

It was therefore shown that the hotel, according to its own standards of proper accommodations, considered baby beds as fitting furniture for use of young infants and had an established policy to furnish these beds if requested. The evidence would also support the conclusion that on the night in question a baby bed was available, though for some undisclosed reason it was not furnished.

■ In this case, however, it is not necessary to determine whether the failure to furnish a baby bed, standing alone, could constitute such negligence as to impose liability for the injuries sustained by this infant. An additional and most significant factor was the presence of an exposed hot radiator pipe in the room to which the Cadicks were assigned. It was an inseparable component of the situation that must be taken into account when determining whether the hotel could be found negligent in assigning the infant a room without such furniture. If, as appellants contend, "there was no baby bed available that night", then it is only reasonable to say the hotel should have taken extra precautions to protect the infant from what was to her a dangerous and hidden hazard. Could not a jury fairly find that the hotel failed to furnish reasonable accommodations when it assigned this child to a room, without a baby bed, wherein there was an instrumentality of potential danger to her if she was not confined?

During the course of the trial the significance of this exposed pipe was somewhat minimized because the trial court ruled that, under Greater Louisville First Federal Sav. & Loan Ass'n v. Stone, Ky., 242 S.W.2d 739, its maintenance was not negligence. Whether this ruling of that case applies under all circumstances may be questioned. It will be observed that there is an appreciable difference between a large office and a small hotel room, particularly with respect to the persons accommodated, the nature of the use, the care required,

and the potentiality of danger. However that may be, the question here is not whether appellants were specifically negligent in having an exposed pipe in the room, but whether they were generally negligent in failing to furnish reasonable accommodations.

■ The presence of the hot pipe was certainly a condition which had a material bearing upon that issue. If this condition presented a special hazard to a particular guest, surely the innkeeper could be reasonably required to exercise special care (which is ordinary care under the circumstances) to protect the guest. The necessity for a baby bed becomes more important in the light of the hazard, and conversely, the hazard assumes more importance because of the lack of the baby bed. It is the combination of these two factors which clearly created a jury issue as to whether, considering all the circumstances, the hotel failed to exercise reasonable care in the furnishing of adequate accommodations for this infant.

■ It is appellants' contention that even if they were negligent, the acts of the parents constituted an intervening and superseding cause of the accident which absolved them of liability. They insist the parents were negligent, but whether they were or not, appellants' position would be sound if what they did was the sole proximate cause of this unfortunate event. An intervening cause or agency which insulates from liability is "an independent force, not naturally arising out of or related to the negligently created condition." Lexington Country Club v. Stevenson, Ky., 390 S.W.2d 137, 141. The question of foreseeability enters the picture but it is not necessary that the party negligently creating the condition foresee the specific subsequent act in the chain of causation. United Fuel Gas Company v. Thacker, Ky., 372 S.W.2d 784, and cases cited therein. The subsequent act of another which grows out of and naturally flows from the condition is not an intervening cause.

Let us examine the conduct of the parents. As heretofore noted, they did rearrange the room to the extent of pushing a bed against the outer wall, which was adjacent to the exposed area. This was done to create a barrier on one side of the bed. They also undertook to barricade the bed at other points so that Gail would not crawl or fall off. They placed her in the middle near the headboard. Everything they did constituted a natural attempt to remedy a precarious situation created by being furnished only an adult bed for the baby to sleep on. *Nothing they did caused Gail to fall,* which, after all, *was the ultimate event which resulted in her injury.*

. Appellants contend the parents could have made better improvisions to protect the child. The very suggestion that they could have done such things as placing the child in a chair or a bureau drawer is an admission that *what the hotel had furnished for the child to sleep on was not an adequate accommodation.* Had the hotel furnished the type of accommodations they customarily furnished in the way of a baby bed, there would have been no problem. The very necessity for making a different arrangement indicates the inadequacy of the accommodations. More than that, this very necessity was created by appellants, and the parents' acts (whether negligent or not) naturally flowed therefrom.

■ As we have said, the acts of the parents could constitute an intervening and superseding cause whether they were negligent or nonnegligent. On the other hand, even if they were negligent, this does not necessarily insulate appellants from liability. If their attempt to rectify the inadequacy of the double bed was reasonably foreseeable and naturally arose out of a condition negligently created by appellants (which we are at this point assuming), appellants may still be found liable by a jury. Assuming the parents were negligent, a jury could fairly determine that their negligence concurred with that of appellants to produce

the injury and the parties would be in the position of joint tort feasors. The applicable principle is quoted in Watson v. Kentucky & Indiana Bridge & R. Co., 137 Ky. 619, 126 S.W. 146, 150, 129 S.W. 341:

"It is also a principle well settled that when an injury is caused by two causes concurring to produce the result, for one of which the defendant is responsible, and not for the other, the defendant cannot escape responsibility. One is liable for an injury caused by the concurring negligence of himself and another to the same extent as for one caused entirely by his own negligence."

See also Roberts v. Taylor, Ky., 339 S.W. 2d 653.

■ The primary duty to furnish reasonable accommodations rested upon the hotel. Having failed to furnish what was customarily furnished, they could reasonably anticipate that the parents would take some precautions to correct the deficiency created by the lack of a baby bed. They could reasonably foresee that, regardless of what the parents did, the possibility that Gail might fall out of a double bed would expose her to this hot pipe hazard. It was equally dangerous to her whether she fell on it or crawled upon it. For appellants to say that it was the sole duty of the parents to protect this child from this hazard is to close one's eyes to the fact they would not have been put in this position had the hotel furnished proper accommodations. Truly this would be transferring the hotel's responsibility to the parents, and would ignore the natural flow of events.

■ We are not undertaking to decide these issues of proximate or intervening cause because we think it clear that reasonable minds could differ in their determination. As in the matter of negligence, our basic question is whether there was sufficient evidence for a jury fairly to find against appellants on these issues. In Pros-

ser on Torts, 3rd Ed., section 52 (page 330) it is said:

"In any case where there might be reasonable difference of opinion as to the foreseeability of a particular risk, the reasonableness of the defendant's conduct with respect to it, or the normal character of an intervening cause, the question is for the jury, subject of course to suitable instructions from the court as to the legal conclusion to be drawn as the issue is determined either way. By far the greater number of the cases which have arisen have been of this description, and to this extent it may properly be said that 'proximate cause is ordinarily a question of fact for the jury to be solved by the exercise of good common sense in the consideration of the evidence of each particular case.'"

We have concluded that appellants were not entitled to a directed verdict.

■ It is next contended by appellants that the court erred in failing to instruct the jury that (1) appellants were not liable if the parents were negligent, and (2) appellants were not negligent in maintaining an exposed radiator pipe in the hotel room. What we have said above disposes of these contentions. Assuming the parents were negligent and such negligence was a contributing rather than an intervening cause of the accident, this would not absolve appellants of liability since the parties would be in the position of joint tort feasors. With respect to the exposed radiator pipe, we have pointed out that though its maintenance may not have independently constituted negligence, it created a condition which, combined with other circumstances, could constitute negligence. Consequently the court did not err in giving the unwarranted instructions.

■ It is further contended that no judgment should have been entered against the Eppley Hotels Company, the sole stockholder of appellant The Seelbach, Inc. at the time of the accident. Though suit had

been brought against this holding company, at the request of appellants it was not treated as a party during the trial and no verdict was returned against it. However, it was sued on the same ground as appellant The Seelbach, Inc., and there was ample proof that it acted as the employer of appellant McDonald, who was the night clerk in charge at the time of the accident. The holding company's liability under the respondeat superior rule was the same as that of appellant The Seelbach, Inc. Under the peculiar circumstances of this case, we believe the court properly entered judgment against this appellant.

The final contention of appellants is that the verdict of $56,500 is excessive. Quoting from appellee's brief, the verdict was:

"* * * based upon uncontradicted proof of four past operations, eight future operations, twelve years of past physical and emotional suffering, 62 years of expected physical and emotional suffering, permanent facial, neck, chin and mouth disfigurement, permanent psychological damage, and medical expenses exceeding $7,000.00."

■ In our opinion the proof amply supports these damages, and they do not strike us at first blush, or at all, as being excessive.

■ We now turn to the other appeal, which has been consolidated with this one. It is the contention of Gail Cadick, as appellant, that the trial court erred in summarily dismissing her claim against defendants Piedmont Aviation, Inc., and Sheraton-Midcontinent Corporation. We feel that these questions are really moot since the judgment we are affirming gives her adequate and secure relief. However, we have carefully examined the contentions of the parties and it is evident that Gail had no cause of action against Piedmont Aviation, Inc., or Sheraton-Midcontinent Corporation.

■ We can find no obligation on Piedmont to furnish safe hotel accommodations

for this child regardless of what duty it had. It committed no act which could have been a proximate cause of this child's injury. The hotel was not acting as its agent. The claim against this defendant was properly dismissed.

■ The claim against Sheraton-Midcontinent Corporation is based upon the purchase of it of The Seelbach Hotel some four years after this accident happened. It is contended that by virtue of the contract of purchase this defendant assumed this liability. The simple answer is that under the contract of purchase such a liability was not assumed.

The judgment is affirmed on both appeals.

STEWART, Judge (dissenting).

I dissent from the majority opinion.

There is no claim in the instant case that the Seelbach Hotel breached its duty concerning the accommodations it furnished the Cadicks, other than to make available a baby crib to them. It is *not* contended the hotel was negligent in maintaining an unprotected hot radiator pipe in the room in which they were placed. The question is thus narrowed to whether this hotel exposed to danger Gail Cadick, the infant guest, by not providing special sleeping facilities for her.

There is nothing in the record to indicate that anything furnished the Cadicks was defectively constructed or was below the standard of accommodations customarily provided for infants. I repeat that the sole basis of the alleged dereliction of duty is that the hotel failed to provide a special bed, such as a baby crib.

Obviously a child eight months of age is utterly incapable of caring for itself and is completely under the care and control of its parents. Consequently, it would be unreasonable to impose upon a hotel the absolute duty to anticipate an infant's needs when the hotel must negotiate solely with

the parents who know better than anyone else the facilities which are required for their child's safety.

In determining whether the hotel's premises were reasonably safe for Gail Cadick, the infant guest, it is uncontradicted that her parents made that determination because they accepted the room for her even though there was no baby crib in it. Furthermore, they assured the bellboy that the accommodations were acceptable. Far from considering the room "unsafe", the Cadicks, after the accident and after returning from the hospital with the child, placed her back in the same bed situated in the same position, and Mr. Cadick went on back to sleep.

The parents instead of the hotel were the immediate and primary custodians of the child in the privacy of the assigned hotel room which they accepted as satisfactory. It is my view that the conduct of the parents of Gail Cadick in rearranging the beds and furniture in the room constituted the immediate and proximate cause of the injury. As has been pointed out, the parents accepted the accommodations with no crib for their child and then proceeded to move the bed, on which the child would sleep, next to the hot radiator pipe and into a potentially dangerous place. Could the hotel have envisioned that they would do this rearranging?

It is fair to say that if the Cadicks had taken the small night table from between the two beds and then moved the beds together and placed the child between them on the beds, the child would have been in a place of comparative safety. It is apparent the child would have been far removed from the hot radiator pipe and would have been less likely to fall from the bed.

Such conduct of the parents in moving the child's bed near the hot radiator pipe was not reasonably foreseeable by the hotel. This act of the parents constituted the sole negligence that produced the injuries, which negligence superseded the claimed negligence of any one else. See American Home

Fire Assurance Company v. Louisville Gas & Electric Company, Ky., 307 S.W.2d 562.

It is my opinion it would be unrealistic to hold that the Seelbach Hotel stands in loco parentis to the child of the Cadicks and that it must assume the risk of the infant's care under the circumstances shown in this case.

MONTGOMERY, J., joins in this dissent.