## STEPHENS *et al.* v. OKLAHOMA CITY RY. CO.

### No. 592. Opinion Filed March 21, 1911.

#### (114 Pac. 611.)

**CARRIERS—Injury to Passengers—Liability—Proximate Cause.** The severe rule of care and diligence which the law imposes upon carriers of passengers does not extend so far as to make one liable for an injury to a passenger from an accident which is not the reasonable, natural, and probable result of the situation, and which could not have been foreseen by the carrier in the exercise of that degree of care which the law demands of him. Dunn, J., dissenting.

(Syllabus by the Court.)

*Error from District Court, Oklahoma County; George W. Clark, Judge.*

Action by Daisy J. Stephens and Beatrice Stephens, a minor, and Bernice Stephens, a minor, by Daisy Stephens, their next friend, against the Oklahoma City Railway Company and others. Judgment for defendant railway company, and plaintiffs bring error. Affirmed.

*E. G. McAdams* and *Everest, Smith & Campbell,* for plaintiffs in error.

*Shartel, Keaton & Wells,* for defendant in error.

KANE, J. This was an action for personal injuries, commenced by the plaintiffs in error, plaintiffs below, against M. H. Kessler, city of Oklahoma City, and the defendant in error, Oklahoma City Railway Company, defendants below. The petition, in so far as it is necessary to notice its allegations for the purposes of this case, states, in substance: That on the 17th day of September, 1905, the plaintiffs were passengers on one of the cars of the defendant, the Street Railway Company, and as such passengers received transfers and had disembarked from a car at the corner of Main and Broadway streets in said city of Oklahoma City, and were there waiting on the sidewalk, in the place desig-

nated by ordinance and fixed by custom for passengers to wait for the north-bound Maywood car of said street railway company, with the intent and purpose of boarding the north-bound Maywood car of said company, and continuing their journey thereon in acordance with the provisions of said transfers; said Maywood car being the only car upon which said transfers, under the rules, regulations, and customs of said company, would be honored. That, while waiting for said north-bound Maywood car, a fire alarm was turned in, and the usual and customary fire alarm signals were given and sounded, which were plainly audible to the employees of said company, who were operating the north-bound Maywood car, for which said plaintiffs were waiting. That at said time said Maywood car was at a point on Main street in said city just west of the corner of Main and Broadway streets. That, when said fire alarm was sounded, said employees on said north-bound Maywood car heard the same, but failed and refused to stop said car, but continued eastward on said Main street and turned north into Broadway street. That plaintiffs, seeing said north-bound car approaching, and knowing by the sign in front of said car that it was the car for which they were waiting and for which they held transfers entitling them to passage thereon, went, with other passengers, from the sidewalk where they had been waiting to a point near the east side of the track of said defendant company, upon which said north-bound Maywood car was approaching, and signaled the motorman to stop said car at said point, which was the usual and customary point for north-bound cars to stop for the purpose of receiving passengers. That said motorman failed and refused to stop said car, but continued northward on Broadway street at a rapid rate of speed, and plaintiffs were thus unable to board said car. By the rules and regulations of said street railway company, said transfers were forfeited and valueless if not used on the said Maywood car then approaching said point. That, after said car had passed plaintiffs, they attempted to return to the sidewalk on the east side of Broadway street, and while they were so attempting to return, and while

plaintiffs were using due and proper care and caution for their own protection and safety, a fire wagon containing fire apparatus, belonging to the fire department of Oklahoma City, came north on Broadway street and on the west side thereof, in response to the fire alarm herein before referred to, which had been sounded two or three minutes previously. That at said time said defendant M. H. Kessler, the chief of said fire department, in a buggy drawn by one horse, was immediately in front of and across the street from said wagon bearing said fire apparatus, and was urging and causing said horse to run at full speed north on the east side of Broadway street. That said fire chief saw said plaintiffs and saw they were in imminent danger of being run down, injured, and killed by him, when he was about 80 feet from them. That said fire department wagon, preceded by said fire chief, came north on Broadway street just at the moment that said plaintiffs attempted to board said Maywood car and were seeking to return to said sidewalk for safety, and that said fire chief saw these plaintiffs in ample time before he reached the point where they were located, and by the exercise of proper care could have stopped said horse and thereby have protected said plaintiffs; but said fire chief, wholly disregarding their rights, and wholly ignoring the danger in which said plaintiffs were placed, did, then and there, in a manner grossly negligent of the rights and grossly unmindful of the lives and safety of plaintiffs, continue to urge his said horse northward at full speed, and did then and there carelessly, negligently, heartlessly, cruelly, and in a cold-blooded and murderous manner, urge said horse and the buggy drawn by it against the persons of said plaintiffs, thereby badly wounding and injuring them, and killing the husband of the plaintiff Daisy J. Stephens and the father of the other plaintiffs who were members of their party.

It is further alleged, in substance: That, by a valid and subsisting ordinance of said city, said street railway company was on said date required to stop its cars after the sounding of any alarm of fire and upon the approach within 300 feet of said cars of any

fire engine or apparatus. That said provisions of said ordinance were unknown to said plaintiffs. That it was the further duty of said company to stop its car on Broadway street at the north line of Main street when properly signaled so to do by persons desiring to enter said cars, and that said company failed and refused to stop said car when said pretended fire alarm was turned in, and failed and refused to stop said car at said north line of Main street on Broadway, although signaled so to do by plaintiffs. That said defendant company failed and refused to comply with the terms of said ordinance, but, on, the, contrary, negligently and carelessly proceeded on its way with said car after the sounding of said pretended fire alarm as aforesaid, and after said car had approached to within 300 feet of said fire apparatus and a buggy occupied by defendant which was proceeding north on Broadway street, and that by its negligence in so proceeding upon its way after the sounding of said pretended fire alarm and after said fire apparatus had approached to within 300 feet of said street railway car, in violation of said ordinance as aforesaid, lured said plaintiffs into the said street and caused said plaintiffs to believe that by remaining in said street they would be able to board said street car, and that had said street car stopped at the north line of Main street on Broadway said plaintiffs could and would have boarded said street car, and would have been in a place of safety. That by reason of the negligence and carelessness of said defendant company, as aforesaid, said plaintiffs were injured and killed as above set out, and that the injury was the direct and proximate result of the combined negligence of defendants herein. That, but for the negligence of said company in proceeding on its way after the sounding of said pretended fire alarm as aforesaid, said plaintiffs would not have been in said street and would not have been exposed to the danger and injury which caused the death of one of said plaintiffs, and that said negligent action of said defendant company, in violation of said ordinance, and in refusing to stop said car as aforesaid, in violation of law and its duty under said ordinance, and as a common carrier of passengers, combined

with the negligence of the other defendants herein as above stated, was the direct and proximate cause of the injury to and the death of said plaintiffs.

To this petition the street railway company filed a demurrer, upon the grounds: (1) That there is a misjoinder of causes of action; (2) that said petition does not state facts sufficient to constitute a cause of action in favor of the plaintiffs and against the defendants. This demurrer was by the court sustained, and, the plaintiffs electing to stand upon their petition, the cause was dismissed as to the street railway company. To review the order of the court below dismissing said cause, this proceeding in error was commenced.

The demurrer of the street railway company raises questions of considerable nicety, as the petition presents a state of facts which are not approximated in any of the cases called to our attention, or that we have been able to find. The rule contended for by counsel for plaintiffs in error is that:

"If the concurrent or successive negligencce of two persons, combined together, results in an injury to a third person, he may recover damages of either or both, and neither can interpose the defense that the prior or concurrent negligence of the other contributed to the injury." (1 Thompson on the Law of Negligence, § 75.)

This rule is illustrated by the following authorities: In *Byrne v. Wilson,* 15 I. R. C. L. 332, an omnibus overturned, precipitating a passenger into the lock of a canal. A third person, for whose acts the proprietor of the omnibus was not responsible, let the water into the canal, in consequence of which the passenger was drowned. The proprietor of the omnibus was held liable for damages for the death of the passenger. In *C., R. I. & P. Ry. Co. v. Sutton,* 63 Fed. 394, 11 C. C. A. 251, Fred Sutton, the plaintiff, was performing his duties as a brakeman on one of the trains of the Chicago, Burlington & Quincy Railroad Company at a railroad crossing near Reynolds, in the state of Nebraska, when an engine and train of cars of the Chicago, Rock Island & Pacific Railway Company collided with the train of the Burlington Com-

pany and injured him. He sued the Rock Island Company for damages for this injury, which he alleged was caused by its negligence. That company denied any negligence on its part, and alleged that the negligence of the Burlington Company caused the injury, and that the defendant in error was guilty of contributory negligence. It was held that "one is liable for an injury caused by the concurring negligence of himself and a third party to the same extent as for one caused entirely by his own negligence." In *Eaton v. Boston & L. R. R. Co.*, 11 Allen (Mass.) 500, 87 Am. Dec. 730, it was held that:

"It is no defense to an action by a passenger against a carrier to recover damages for an injury sustained through its negligence that the negligence or trespass of a third party contributed to the injury, although such third party acted entirely independently of the carrier."

In *Johnson v. Northwestern Tel. Exch. Co.*, 48 Minn. 433, 51 N. W. 225, the defendant, the Northwestern Tel. Exch. Company, erected poles with cross-arms and strung its telephone wires thereon, in Central avenue, a public street in the business portion of East Minneapolis. One of the poles, bearing about 100 wires, stood at a curve in the street. The plaintiff's evidence tended to show that this pole had become rotten, and had not sufficient strength to withstand the weight and stress of these wires. The plaintiff was driving along this street upon a wood cart, when this pole broke near the ground and fell into and across the street, carrying with it the wires strung thereon. The pole struck the rear part of the wood cart, and smashed it, throwing the plaintiff to the ground thereby injuring him. Guys had been fastened to the top of the pole and attached to a brick building belonging to a Mr. Shadwell. About a month before the accident, Shadwell notified the defendant to remove these guys from his building, saying: "If you do not take them off, I will cut them off." The defendant replied, "Well, all right, take them off." On the day of the accident Shadwell cut the guys, and as he did so the pole fell and the plaintiff was injured. It was held that, "where the negligence

of the defendant and the act of a third person concurred to produce the injury complained of, so that it would not have happened in the absence of either, the negligence was the proximate cause of the injury." Mr. Chief Justice Gilfillan, in delivering the opinion for the court, said: "The negligence of each is a proximate cause, where the injury would not have occurred but for that negligence."

The foregoing cases and the case at bar are, in a good many respects, similar in principle; but we are of the opinion that in the instant case, at least, the rule invoked is subject to the limitation pointed in *Clark v. Chambers,* 3 Q. B. Div. 327, 7 Cent. L. J. 11, that the intervening agency must have been one which the first actor was bound to anticipate. The rule seems to be that where the negligent act causes consequences such as in the ordinary course of things were likely to arise, and which might, therefore, reasonably be expected to arise, or which it was contemplated by the parties might arise, liability follows; otherwise not. *Clark v. Chambers, supra.* In *Sharp v. Powell,* 20 W. R. 584, L. R. 7 C. P. 253, one of the cases cited by Cockrum, C. J., in *Clark v. Chambers,* it was held that "the action would not lie where the injury, though arising from the unlawful act of the defendant, could not have been reasonably expected to follow from it." In that case Lord Chief Justice Bovill says:

"No doubt one who commits a wrongful act is responsible for the ordinary consequences which are likely to result therefrom; but, generally speaking, he is not liable for damage which is not the natural or ordinary consequences of such an act, unless it be shown that he knows, or has reasonable means of knowing, that consequences not usually resulting from the act are, by reason of some existing cause, likely to intervene so as to occasion damage to a third person. Where there is no reason to expect it, and no knowledge in the person doing the wrongful act that such a state of things exists as to render the damage probable, if injury does result to a third person, it is generally considered that the wrongful act is not the proximate cause of the injury so as to render the wrongdoer liable to an action."

Mr. Justice Strong, discussing this question in *Milwaukee & St. P. Ry. Co. v. Kellog,* 94 U. S. 469, 24 L. Ed. 256, said:

"But it is generally held that, in order to warrant a finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances."

Even the severe rule of care and diligence which the law imposes upon carriers of passengers does not extend so far as to make one liable for an injury to a passenger from an accident which is not the reasonable, natural, and probable result of the situation, and which could not have been foreseen by the carrier in the exercise of that degree of care which the law demands of him. 3 Thompson's Commentaries on the Law of Negligence, § 2778. The reason of the rule is that the law holds a person liable for those consequences only which were the natural and probable result of his negligence, and which therefore ought to have been foreseen and anticipated.

Can it be said that the agent of the street railway company ought to have foreseen and anticipated the result of its negligence? This question must be answered in the negative. Personal injury is not one of the consequences that naturally follow missing a street car. Ordinarily no serious consequences flow from such a mishap. Cars usually run within a few minutes of each other, no appreciable time is lost, and the fare is always a matter of small consequence. If it were not for the terrible calamity that overtook the plaintiffs in this case, their actual damage would probably not greatly exceed the value of the unused transfer tickets. As stated in the petition, the specific acts that actually caused the injury complained of were of an extraordinary nature and cruel and inhuman, almost beyond belief. The petition alleges, in substance, that, a moment after plaintiffs attempted to board said car, and while they were seeking to return to said sidewalk for safety, said fire chief saw them before he reached the point where they were located, and by the exercise of proper care could have stop-

ped his horse and avoided the casualty; that, instead of stopping as he could have done, he negligently, heartlessly, cruelly; and in a cold-blooded and murderous manner urged his horse, and the buggy drawn by it, against the said plaintiffs, thereby wounding and injuring all of them, and one of them so badly that within a few hours he died. Would it not have been perfectly natural and reasonable for the agent of the street car company to presume, even if he saw the chief of the fire department bearing down upon the plaintiffs, under the circumstanes set out in the petition, that he would stop his horse before reaching them, and avoid the injury? The only negligence the agent of the street railway company is charged with is not stopping his car as required by the ordinance; otherwise he is blameless and in no way participated in the terrible catastrophe. It is true it was the plain duty of the street car company to stop its car at the place the plaintiffs sought to board it; but we do not believe that under the circumstances of this case it can be said that the unusual results that followed this act of negligence ought to have been foreseen by the agent of the company. It would be a hard, and we think an unjust, rule to hold that the street railway company was bound to anticipate the criminal act of the fire chief.

*Watson v. Kentucky & Indiana Bridge & Railroad Company et al.*, 137 Ky. 619, 126 S. W. 146, 129 S. W. 341, is strongly in point. That was a personal injury case, commenced by Watson against the Kentucky & Indiana Bridge & Railroad Company, the Southern Railway Company, the Southern Railway Company in Kentucky, and the Union Tank Line Company, to recover damages for injuries sustained from an explosion of gas caused, as alleged, by the negligence of the defendants. The facts necessary to notice for the present purpose were that the tank from which the gasoline escaped belonged to the Union Tank Line Company. In reaching its consignee, it passed over several lines of railway, and was delivered by the Baltimore, Ohio & Southwestern Railroad to the defendant bridge and railroad company, in the city of Louisville, in what is known as the Youngtown yards. The

latter company was at the time of the accident hauling the tank car, attached to one of its trains, from its railroad yards near the Ohio river to the place of business of the consignee in the southern part of the city. The derailment of the car occurred about 7:30 o'clock in the evening, between Walnut and Madison streets. The gasoline began at once to escape from the tank and continued to do so for several hours until the tank was emptied. By the derailing of the car the discharge pipe beneath the tank provided for emptying it of its contents was broken, as were the appliances for opening and closing the valves by which the contents were allowed to leave, or prevented from leaving, the tank. The gasoline in escaping from the tank ran down a gutter or drain in the street and along defendant bridge and railroad company's right of way several hundred feet to a sewer into which it flowed. The employees of defendant bridge and railroad company connected with the train in question, and later the wrecking crew called to their assistance, seemed to be unable to stop the escape of gasoline from the tank, or at any rate did not do so. From the gasoline vapor or gas of a highly combustible character arose and permeated the atmosphere a distance of 500 or 600 feet from the place of derailment. About 11:30 o'clock, Charles Duerr, who was standing on Madison street, a square west of the place of the accident, struck a match which he threw to the ground, and this match in its descent came in contact with the gas generated by the flowing gasoline, thereby causing the explosion by which appellant was injured. There was evidence tending to show that Duerr wantonly and maliciously lighted a match for the purpose of causing the explosion. Discussing the case upon this hypothesis, Mr. Justice Settle, who delivered the opinion for the court, said:

"If, however, the act of Duerr in lighting the match and throwing it into the vapor or gas arising from the gasoline was malicious, and done for the purpose of causing the explosion, we do not think appellees would be responsible, for while the appellee bridge and railroad company's negligence may have been the efficient cause of the presence of the gas in the street, and it should have understood enough of the consequences thereof to have fore-

seen that an explosion was likely to result from the inadvertent or negligent lighting of a match by some person ignorant of the presence of the gas or of the effect of lighting or throwing a match in it, it could not have foreseen or deemed it probable that one would maliciously or wantonly do such an act for the evil purpose of producing the explosion. Therefore, if the act of Duerr was malicious, we quite agree with the trial court that it was one which the appellees could not reasonably have anticipated or guarded against, and in such case the act of Duerr, and not the primary negligence of the appellee bridge and railroad company in any of the particulars charged, was the efficient or proximate cause of appellant's injuries. The mere fact that the concurrent cause or intervening act was unforeseen will not relieve the defendant guilty of the primary negligence from liability; but, if the intervening agency is something so unexpected or extraordinary as that he could not or ought not to have anticipated it, he will not be liable, and certainly he is not bound to anticipate the criminal acts of others by which damage is inflicted, and hence is not liable therefor. 29 Cyc. 501-512; *Sofield v. Sommers*, 9 Ben. 526, Fed. Cas. No. 13,157; *Andrews v. Kinsel*, 114 Ga. 390, 40 S. E. 300, 88 Am. St. Rep. 25."

The principle we believe to be applicable to the statement of facts set forth in that part of the petition which seeks to charge the street railway company with liability is further illustrated by the following cases: In *Scheffer v. Railroad Co.*, 105 U. S. 249, 26 L. Ed. 1070, a passenger, injured in a railway collision, became in consequence thereof disordered in mind and body, in consequence of which, some eight months thereafter, he committed suicide. His personal representatives brought an action against the company to recover for his death in consequence of the injury. It was held that this act, and not the negligence of the company, was the proximate cause of the injury, and that he could not recover. In *Henry v. St. Louis, etc., R. Co.*, 76 Mo. 288, 43 Am. Rep. 762, the plaintiff was told to change cars, and got into one which was not ready, and was told to get out of that, and was injured by a passenger train soon after alighting. It was held that his expulsion from the car was not the proximate cause of the injury. In *Haley v. St. Louis Transit Co.*, 179 Mo. 30, 77 S.

W. 731, 64 L. R. A. 295, it was admitted the street railway was guilty of negligence in failing to stop the car on which plaintiff was a passenger at the street where she wished to alight to go to her home, according to her signal twice properly and timely given; but it was held that it was not the proximate cause of the subsequent injuries she received from a fall while walking on the sidewalk between the place she alighted and her home, the sidewalk being covered with ice and snow. In *Central of Georgia Ry. Co. v. Price,* 106 Ga. 176, 32 S. E. 77, 43 L. R. A. 402, 71 Am. St. Rep. 246, it was held that the negligence of a railway conductor in carrying a passenger beyond her destination was not the proximate cause of an injury received by her in consequence of the explosion of a lamp in a room at the hotel at which she was waiting for a return train.

The plain reason of all of those cases is that the injury inflicted could not have been foreseen even by the exercise of that high degree of care and foresight which the law puts upon common carriers of passengers. We think the case at bar falls fully within the reason of the rule.

The judgment of the court below is, accordingly, affirmed.

TURNER, C. J., and WILLIAMS and HAYES, JJ., concur.

————

DUNN, J. (dissenting). From the conclusion reached by my Associates in the foregoing case I am constrained to dissent.

An ordinance of Oklahoma City (No. 281) relating to the management of the cars of the street railway company on the sounding of a fire alarm provides:

" * * * The cars of such railway company shall be stopped after the sounding of a fire alarm and upon the approach of fire engines, hose cart or other fire apparatus, which stoppage shall be made when such apparatus is within a distance of 300 feet of such cars, and shall remain standing until the same have passed."

Had the company observed this ordinance, and had the car stopped on the sounding of the fire alarm, the injuries complained of

would not have happened. The violation of a valid ordinance is usually held to be *prima facie* evidence of negligence. The car did not stop, but, as averred by the petition, continued its course east, along Main street, until it came into Broadway and into the direct line of travel of the fire apparatus. Nor does the petition leave room for conjecture nor for the operation of the rule that one is held to be liable for the result of his negligence only when the same could or should have been foreseen, for the petition specifically avers that, when the said Kessler and the wagon bearing the fire apparatus were approaching the point where this injury occurred and at a place less than 300 feet south of the corner, they "were in plain view of and were seen and heard by the motorman and conductor of said car, but that said motorman and conductor, in violation of their duty and in violation of the said ordinance No. 281, failed and refused to stop said car at said point." From which it will be seen that the operatives of this car and the company acting by and through them were required to exercise no foresight whatsoever in order to be held chargeable with the liability here sought to be enforced. These rapidly moving engines of destruction, it is averred were in sight of the motorman and conductor; that they could and did see them; and, independent of any ordinance, failure to stop, under the facts shown, was manifestly negligence. The operatives of the car might not have known with absolute certainty that there would be passengers called into the street by its continued travel, but they knew they were doing the thing which would call them there if any desired passage, and they certainly did know that by their action some accident (if not this, some other) was likely to occur. This is all that the law requires to fix liability upon them for injuries which did occur. Nor is the gross disregard of ordinary care involved in the foregoing acts the only thing with which they are made chargeable herein. The car not only did not stop when the alarm was sounded and when the the fire apparatus came into the vision of the employees, but, in addition thereto, it failed to stop after proceed-

ing on its way to a point where the deceased and injured parties stood, which was in the direct line of travel of the fire chief's running horse. At this place it is alleged in the petition it was the duty of the said company to stop its cars, and that this was the usual and customary point for the cars to stop, and it is further alleged that these parties were passengers on the said railway and held transfers and were at the proper place to take and board the cars to continue their journey. Nor is this all. It is further alleged that this is the only car which they could take under the terms of their transfers. So that the railway company, in addition to deliberately driving its car into a place where it was seen some accident was likely to happen, violated a positive contract which it had made with these people when it received their fare for carriage. It required them under its contract to take this specific car and none other, and then failed to stop the car at the proper place and time to enable them to secure the benefit of this contract. It is alleged in the petition and manifest that if the car had stopped in response to the requirements of the ordinance, or if it had stopped when the operatives saw the fire apparatus approaching, or if it had stopped in response to the contract into which the company had entered, the injuries here complained of would not have happened.

All the foregoing acts may be termed, so far as the deceased and the plaintiffs herein are concerned, to have been as to them acts in the nature of omission of due care for their welfare rather than commission; but it is further averred that, by the car proceeding on its way after the alarm or view of the fire wagons was had, the plaintiffs and the deceased were lured into the street and caused to believe that by remaining in the street they would be able to board the car when it reached the point where they stood; that when the car did not stop so that they could board it, they were left standing there exposed to the danger which overwhelmed them. These facts, when taken together, in my judgment render

the company liable for the injuries for which relief is here prayed. The petition avers that:

"Said Mark H. Kessler saw these plaintiffs and saw said deceased, Daniel L. Stephens, in ample time before he reached the point where plaintiffs and said Daniel L. Stephens were located, and when he was about 80 feet from them, by the exercise of proper care to have checked the rate of speed at which he was driving and to have stopped said horse, and thereby to have protected plaintiffs and said Daniel L. Stephens from the danger which they were in, which said danger was imminent and beyond the power of said plaintiffs and of said Daniel L. Stephens to avoid, but that said Mark H. Kessler, wholly disregarding their rights and wholly ignoring the danger in which these plaintiffs and the said Daniel L. Stephens were placed, did, then and there, in a manner grossly negligent of the rights and grossly unmindful of the lives and safety of plaintiffs and of said Daniel L. Stephens, continue to urge his said horse northward at full speed, and did then and there carelessly, negligently, heartlessly, cruelly, and in a cold-blooded and murderous manner urge said horse and the buggy drawn by it against the person of said Daniel L. Stephens, thereby wounding and injuring the said Daniel L. Stephens so that within a few hours he died."

The foregoing allegations in my judgment do not bring this case within the rule laid down in the case of *Watson v. Ky. & Ind. Bridge Co.*, 137 Ky. 619, 126 S. W. 146, 129 S. W. 341, from the Kentucky Court of Appeals. The general proposition there stated will, I believe, not be denied. The act there dealt with was one of wanton criminality for the purpose of committing a crime. In the case at bar there is no averment of fact leading us to believe that Kessler intended and willingly killed or injured these people. He had no bludgeon, firearm, or knife, nor other such deadly weapon, nor is it shown that in his mind he was bent upon destroying these people. He was engaged in depicting a scene which occurs every day in the crowded streets of every big city of this nation and using the ordinary means used in carrying it out. If, instead of the injuries occurring as above set out, some enemy of these people had, with a deadly weapon, assaulted them and inflicted the injuries alleged, then the rule of the case from the

Kentucky Court of Appeals would be applicable. But it is not applicable here because of this distinction, and also it seems to me for another reason. These people were passengers on the street car company's line. They were in every particular acting within their contractual rights. It was the affirmative duty of the street car company to use every reasonable precaution that it could to guard them from danger, either of negligence or criminality. The averments show that the company's employees saw Kessler and the fire apparatus approaching to the point where these people should board the car, and if, seeing this, it did not stop, in my judgment it would be liable for the injuries which happened even if Kessler had maliciously and wantonly run them down with his horse; this for the reason that the parties were passengers, and the company saw and could have prevented the injury. But the averments of this petition do not make of Kessler's act a crime. Among the synonyms for "murderous," Webster's New International Dictionary mentions "savage," and "cruel"; and "murderous," as defined in the Century Dictionary and Encyclopædia, means "very brutal; cruel or destructive"; and "murderous," "in a murderous or bloody manner." All of these epithets could be applied to Kessler's acts and yet not charge them as criminal.

Section 5655 of the Compiled Laws of Oklahoma 1909, provides that:

"In the construction of any pleading, for the purpose of determining its effect, its allegations shall be liberally construed with a view to substantial justice between the parties."

Taking the facts as set forth in the pleadings before us and giving them the construction required by the foregoing statute, in my judgment substantial justice requires that we should overrule the demurrer and send the case to the district court for a trial of the issues of fact by a jury.