## A & A CAB OPERATING CO. v. DRAKE.

No. 32798.   March 2, 1948.

Rehearing Denied April 20, 1948.

*192 P. 2d 1004.*

Herbert K. Hyde, of Oklahoma City, for plaintiff in error.

Claud Briggs, Thad L. Klutts, and John Morrison all of Oklahoma City, for defendant in error.

RILEY, J.   Bertha Drake sued plaintiff in error to recover damages for personal injuries sustained by her while a passenger in defendant's cab, operated for hire.

On March 1, 1945, plaintiff entered defendant's cab at the corner of Main and Robinson streets in Oklahoma City. As plaintiff approached the cab, defendant's chauffeur opened the door to permit plaintiff to enter, which plaintiff did. But before plaintiff could be seated, the cab door closed against plaintiff's right hand, on the framework of the cab, so as to break and mangle the bones of plaintiff's hand, resulting in plaintiff's partial but permanent injury for which she sought damages, together with that for pain and suffering, medical care, and the like.

Negligence of defendant was predicated upon allegations of failure to use care to prevent the door from closing so as to injure plaintiff; and it was alleged that the cab, at the time of the accidental injury, was stopped in a position that permitted the door of the cab to swing shut.

Defendant, in answer, pleaded that plaintiff's injury and damages, if any, were proximately caused by an intervening act of some third person, unknown to defendant; and contributory negligence of which plaintiff was guilty.

The issues were joined by reply denying allegations of defendant's answer, and the cause was tried to a jury, resulting in a verdict for plaintiff in the sum of $3,875, for which judgment was

rendered against defendant; and defendant has appealed.

Plaintiff testified that defendant's chauffeur opened the door of the cab as she entered—it was very slick—had started to mist—the cab was tilted when she caught hold of the center piece to get into the back seat—the chauffeur opened the front door for another lady. "The door come (sic) shut and hit me on my hip; the back door hit me on the hip and threw me off my balance, and to keep from falling, I caught hold of that center piece with my hand; that front door slammed on my hand. The ice and snow were banked there; the cab did not seem to be level; the driver did not get out. The right wheels of the cab were up on that snow which was banked up against the curb until the cab seemed to be in a tilted position. It did not seem level; there was one lady in the front seat with the driver. He took me to the Medical Arts Building and I found a doctor there. I remained under the care of the doctor until May or June, 1945. I have not been able to do a day's work since and still have pain and discomfort in that hand; it runs clear back to the elbow."

Dr. White (Phil E.), whose qualifications were admitted, testified as to the extent of plaintiff's injuries.

Defendant then admitted plaintiff's disability, but denied its liability.

Mrs. Drake, being recalled, testified that the door just came shut and hit her right hand; and denied, on cross-examination, that a lady in the front seat offered to give her $5 to pay her doctor bill.

Defendant's demurrer to plaintiff's evidence was overruled and defendant produced Ola Padgett as a witness, who testified that on March 1, 1945, she was a passenger in the taxicab of defendant when plaintiff was injured; that she was the last to enter the cab; that she opened the door of the cab and got in the front seat; there were three people in the back seat when the witness pulled the door to and shut it, whereupon plaintiff said: "Look what you done to my hand" . . . .

"I was sorry if I done it, and I said, 'Well, I don't know what to do but I will give you $5 to go to the doctor with it'. She said no, she would not take my money—she did not blame me for it."

The testimony of Arline Nesbitt corroborated that of Mrs. Drake, as did the testimony of Mrs. Joe M. Sprinkle.

Morgan B. Moore, defendant's chauffeur, testified that the cab was level when plaintiff entered; that all of the ladies came up practically at the same time; the back seat was loaded first, then the front seat, "the door came to and caught the lady's fingers".

"Q. Did you hear any conversation between the lady in the front seat—who mentioned the doctor? A. The lady in the front seat, the way I understand it, I really don't know."

Thereafter the witness corroborated defendant's prior witnesses, and denied that he closed the door of the cab on plaintiff's fingers.

There rests upon carriers for hire a very high degree of care to safeguard passengers from harm, occasioned by their negligence. Whether defendant was guilty of negligence in the case at bar is a question of fact—this question of fact was submitted to the jury under instructions assumed to be proper in the absence of objections, and by the jury determined favorably to plaintiff.

The testimony of Mrs. Padgett that she closed the cab door on plaintiff's hand, if believed by the jury, would have sustained defendant's plea of an intervening agency as a result of which defendant might have been relieved from liability. But the evidence was somewhat conflicting. That of plaintiff was supported by testimony as to physical facts which, by the jury, were evidently believed.

But if the cab door was closed by the passenger in the front seat, as testified to by her, the issue of the proximate cause of plaintiff's injury was properly submitted to the jury. Prickett v. Sulzberger & Sons Co., 57 Okla. 567, 157 P. 356.

Negligence may consist of a failure to exercise care and what is or what is not negligence is ordinarily a question for the jury and not the court, especially when the standard of duty is not fixed but variable. Where the standard of duty shifts with the circumstances of the case, it is incapable of being determined as a matter of law. Whether the circumstances in a given case are such as to suggest the necessity of assisting a passenger is a question for the jury.

Under such circumstances, the composite as a whole, assuming their individual selection as reasonable men, a jury would seem to be as well qualified to make the determination as a good but single judge on the bench. It is only where facts are such that all reasonable men must draw the same conclusion that the question of negligence vel non becomes one of law for the court and then only in the absence of negligence on defendant's part contributing to the injury, plaintiff may not recover damages. The proximate cause of an injury is ordinarily a question for the jury. St. Louis & S. F. R. Co. v. Davis, 37 Okla. 340, 132 P. 337; Griffin Gro. Co. v. Scroggins, 145 Okla. 9, 293 P. 235; Tulsa Yellow Cab, etc., v. Salomon, 181 Okla. 519, 75 P. 2d 197.

"So, when the rule of intervening efficient cause is relied on by the defendant, it is ordinarily a question for the jury whether there was such an intervening efficient cause as would prevent the negligent act or omission of the defendant from being the proximate cause of the injury". 38 Am. Jur., Negligence, §352, pp. 1060-1061.

If this defendant's agent should have foreseen and anticipated that the act of a third party might combine with defendant's acts or omissions to cause an injury to plaintiff, then the act of the third party is noneffective to relieve defendant from liability for its own negligence. The jury apparently believed defendant violated its duty to plaintiff in this regard, for when plaintiff sought and secured passage in the cab there was evidence that it was tilted so that the doors of their own weight would swing shut and that the front door closed, to plaintiff's injury and damage, through no fault of her own against which she could guard against to save herself. City of Okmulgee v. Hemphill, 183 Okla. 450, 83 P. 2d 189, but see Intriligator v. Goldberg, 299 Mass. 333, 12 N.E. 2d 730.

Affirmed.

HURST, C.J., and WELCH, ARNOLD, and LUTTRELL, JJ., concur. DAVISON, V.C.J., and BAYLESS, CORN, and GIBSON, JJ., dissent.

---

DAVISON, V.C.J. (dissenting). I cannot concur in that part of the decision and opinion of the majority of the court in this case holding that "the issue of the proximate cause of plaintiff's injury was properly submitted to the jury." It is my opinion that the motion of defendant for an instructed verdict should have been sustained by the trial court. This is one of those cases wherein a feeling of compassion, charity and sympathy tends to induce a misapplication of settled principles of law to a fact situation clearly governed thereby. The plaintiff, a praiseworthy, hardworking lady, was seriously and permanently injured through no fault of her own. But, however severe her plight, this defendant should not be compelled to compensate her for her loss, unless responsible for her condition. I do not think the record discloses any such responsibility.

Although the positive testimony was that "The cab was sitting perfectly

level" and plaintiff's testimony was that "the cab seemed to be in a tilted position. It did not seem level," it will be conclusively assumed that the cab was tilted; that there was a duty on the part of the driver to assist plaintiff, which he did not do; and that each of these facts constituted negligence on the part of the defendant. Still, plaintiff's injury was a crushed hand caused by the cab door being slammed on it by another passenger, in no manner the agent of the defendant.

I cannot agree with the statement in the opinion that "the evidence is somewhat conflicting." Plaintiff's entire testimony on this point was as follows:

"Q. Now, how did the front door open whether to the front or back? A. Well, it opened to the front. It swung open. Q. And what about the back door? A. It swung back, because at the same time as I went to get in, he opened the front door for another lady. I started in and when I got in, or was trying to get in so that I could sit down, the door come shut and hit me on my hip. Q. Which door, now? A. My door. Q. The back door? A. The back door hit me on the hip and threw me off of my balance, and to keep from falling, I caught hold of that center piece with my hand. Before I could sit down, that front door was slammed on my hand. . . . Q. Had you ever turned loose of this dividing strip between the two doors from the time you started to get into the cab until this accident happened? A. No; I did not. Q. What position were you in, Mrs. Drake, at the time this door was pulled shut or whatever happened to it, when your hand was caught, what position were you in at that time? A. Well, I was just in the act of setting down when the door bumped me. It hit me with such force that it threw me off balance and I grabbed hold of it. Q. You already had hold of it? A. I grabbed onto that to keep from being thrown over on my head. Then, it just came shut and hit my hand right then. . . . Q. Now, did you at that time put your right hand on this panel—was that what you did, you put your right hand on the panel? A. To

get in? Q. Yes. A. I guess so. Q. Now, as you did that, the door would have to be closed then, wouldn't it? A. No; the driver opened the front door at the same time I got in for the other lady to get in the front seat. Q. You mean the lady got in the front seat at the same time you got in? A. Yes, sir."

The lady, who got into the front seat at the same time plaintiff got in the rear seat, testified:

"A. Well, I shut the door. Q. You shut the door? A. Yes, sir. Q. What happened when you shut the door? A. This lady, in a few seconds, says, 'Look what you done to my hand.' Well, I naturally—it upset me. I was sorry if I done it. . . . A. . . . I closed the door and she told me I hurt her hand. Q. Did she tell you that you had closed the door on her hand? A. She said, 'You have hurt my hand.' "

Another passenger testified that plaintiff "reached up and took hold and then was when the door was slammed on her hand." The only other witness to testify about it was the cab driver, as follows:

"A. . . . When the door came to and caught the lady's fingers, I sat there for a minute or so afterwards and was talking about it and she wanted me to take her to her doctor, which I did . . . Q. Did you hear a conversation between the last lady that got in and the lady that got her hand smashed? A. Yes; the lady that closed the door offered the other lady $5."

The only place it is mentioned that the door swung shut because of the tilted condition of the cab is in a question from plaintiff's attorney to the driver:

"Q. . . . don't you recall that that snow bank was high enough that the hind wheels of your cab were sitting up on it and that threw your cab in a tilt to the left so that the doors would not remain open when they were opened, but would swing to of their own volition? A. No; they would not swing to."

The universally adopted rule of law applicable in such cases is stated in

St. Louis & S. F. R. Co. v. Hess, 34 Okla. 615, 126 P. 760:

"It is a well-established rule that, although a defendant may be shown to have been negligent, yet, unless the negligence so shown was the proximate cause of the injury complained of, no recovery can be had for the negligence. Neely v. S.W.C.O. Co., 13 Okla. 356, 75 P. 537, 64 A.L.R. 145; Mayne v. Chicago, etc., Co., 12 Okla. 10, 69 P. 933; Stephens v. Okla. Ry. Co., 28 Okla. 347, 114 P. 611, 33 L.R.A. (N.S.) 1007; C.,R.I. & P. Ry. Co. v. Beatty, 27 Okla. 846, 116 P. 171; Mills v. Wilmington City Ry., 1 Marv. (Del.) 269, 40 Atl. 1114; Byrd v. Express Co., 139 N.C. 273, 51 S.E. 851; Marsh v. Giles, 211 Pa. 17, 60 Atl. 315; Florida, C. & P.R.R. Co. v. Williams, 37 Fla. 406, 20 South. 558; Sullivan v. Morrice, 109 Ill. App. 650; Perry v. Central R. Co., 66 Ga. 746; Stepp v. C., R.I. & P. Ry. Co., 85 Mo. 229; Louisville, N.A. & C. Ry. Co. v. Thompson, 107 Ind. 442, 8 N.E. 18, 9 N.E. 357, 57 Am. Rep. 120; Brotherton v. Manhattan Beach Imp. Co., 48 Neb. 563, 67 N.W. 479, 33 L.R.A. 598, 58 Am. St. Rep. 709; Tutein v. Hurley, 98 Mass. 211, 93 Am. Dec. 154; Patch v. City of Covington, 17 B. Mon. (Ky.) 722, 66 Am. Dec. 186; Worcester v. Great Falls Mfg. Co., 41 Me. 159, 66 Am. Dec. 217 and note 219."

To the same effect are: St. Louis & S. F. R. Co. v. Criner, 41 Okla. 256, 137 P. 705; Kansas City Ry. Co. v. Langley, 62 Okla. 49, 160 P. 451; Wichita Falls & N. W. Ry. Co. v. Cover, 65 Okla. 110, 164 P. 660; Star v. Brumley, 129 Okla. 134, 263 P. 1086; Patrick v. Oklahoma City et al., 170 Okla. 545, 41 P. 2d 103; Lowden et al. v. Friddle, 189 Okla. 415, 117 P. 2d 533; Southwestern Motor Carriers, Inc., v. Nash, 195 Okla. 604, 159 P. 2d 745.

In the last cited case it is said:

"Where the relation of carrier and passenger exists the carrier owes the passenger the highest degree of care for his safety but liability of the carrier for injury to a passenger is based solely on negligence since the carrier is not an insurer of the safety of the passenger.

"Where acts of negligence alleged have no causal connection with the injury sustained a demurrer to the evidence of plaintiff should be sustained and a verdict directed for the defendant."

The applicability of the general rule to situations where there is an intervening cause is stated in the case of City of Okmulgee v. Hemphill, 183 Okla. 450, 83 P. 2d 189, as follows:

" . . . In order that a defendant be liable under such circumstances his negligence need not be the sole cause but it must at least be a concurrent cause. As stated in Munroe v. Schoenfeld & Hunter Drilling Co., 178 Okla. 149, 61 P. 2d, 1045, if the negligence merely creates a condition by which the injury is made possible, and a subsequent independent act of some other person causes the injury, the defendant is not liable. This is because the negligence is not the proximate cause of the injury. In the second court syllabus of that case we said (page 1046): 'The proximate cause of any injury must be the efficient cause which sets in motion the chain of circumstances leading to the injury; if the negligence complained of merely furnishes a condition by which the injury was possible and a subsequent independent act caused the injury, the existence of such condition is not the proximate cause of the injury'."

See, also, Davies v. Shawver (Kan.) 8 P. 2d 953; McMillan et al. v. Thompson et al. (Cal.) 35 P. 2d 419; Gawpin et al. v. Murphy et al., 295 Pa. 214, 145 Atl. 123; Louisville & N. R. Co. v. Courson, 234 Ala. 273, 174 So. 474; Stephens v. Oklahoma City Ry. Co., 28 Okla. 340, 114 P. 611.

Several cases appear in the reports wherein the plaintiffs have been injured by fellow passengers closing taxicab doors on their hands. All hold that such act is not foreseeable by the driver.

In Intriligator v. Philip Goldberg, 299 Mass. 333, 12 N.E. 2d 730, the cab stopped; a passenger alighted; plaintiff, in attempting to get out, grasped the door jamb; the door was slammed

and plaintiff's hand injured. Holding that plaintiff's injury was not the proximate result of any negligence on the part of the defendant, the court said:

"The plaintiff having been accepted as a passenger, the defendant became bound to exercise in the management of his cab the highest degree of care required by the circumstances to protect her from injury during transportation . . . . But he was not bound to anticipate every possible peril which might threaten her. He was not an insurer, nor was he obliged to foresee the impossible or highly improbable . . . . We think it is clear that no relationship of agency is shown between the defendant and the passenger who carelessly slammed the door. It is apparent that this passenger opened the door of the cab for his own purpose and that in closing it he was not acting for the defendant. But whatever there may be to this, we do not think his act of closing the door in the circumstances disclosed was a thing which the defendant should have anticipated."

In Vogel v. Laiso, 252 App. Div. 894, 300 N.Y.S. 180, the New York court said: "The law imposes no duty on the driver to anticipate the unusual happening." This holding was reaffirmed in Dufresne et al. v. City Taxi, Inc., 258 App. Div. 1057, 17 N. Y.S. 2d 663. In Zayer v. Splendido et al., 42 N.Y.S. 2d 85, the same court said:

"The occurrence could not have been reasonably foreseen or guarded against. The issue of negligence is solely one against a third party for whose conduct, on the facts stipulated, defendants are not responsible."

Since plaintiff's injury herein resulted from the acts of another passenger, in no wise acting on behalf of defendant, and could not have been foreseen or anticipated, any negligence on the part of defendant's employee is too remote to warrant recovery.

In my opinion, no conclusion can be drawn from the evidence other than that plaintiff was injured by the closing of the taxicab door by a fellow passenger for whose acts the defendant was not responsible; that the entire effect of all negligence alleged was the grasping of the door jamb by the plaintiff, which caused no injury; that the force of any negligence had spent itself at this point and in no way contributed to the closing of the door and plaintiff's resultant injury.

In the case of Shell Petroleum Corp. et al. v. Worley, 185 Okla. 265, 91 P. 2d 679, it was held:

"As a general rule the proximate cause of an injury, in an action for damages based upon tort, is a question of fact for the jury, but where the evidence as a whole together with all the inferences to be drawn therefrom is insufficient to point out or show a causal connection between the alleged wrongful acts of the defendant and plaintiff's injury and there is no element of willful and intentional wrong, it becomes a matter of law for the court."

As was said in St. Louis & S. F. R. Co. v. Hess, supra:

"Under the evidence and the amended petition, the court should have directed a verdict for defendant. This is merely one of those cases where the proof fails. It is not every injury for which compensation may be had. Life is strewn with accidents and mishaps for which no one can be held in damages."

I therefore respectfully dissent.

I am authorized to state that Mr. Justice BAYLESS and Mr. Justice GIBSON concur in the above views.