**John NORTH dba Union Cab Company and Ray Austin, Plaintiffs in Error,**

v.

**Carrie V. WILLIAMS, Defendant in Error.**

No. 39273.

Supreme Court of Oklahoma.

Nov. 7, 1961.

Fischl & Culp, F. Lovell McMillin, Ardmore, for plaintiffs in error.

Gene T. Ritter, Ardmore, for defendant in error.

BERRY, Justice.

The parties who appear here in reverse order to their appearance in the trial court, will be referred to herein as they appeared in said court or by name.

From order denying defendants' motion for new trial, which was directed to judgment on verdict for plaintiff in the amount of $3,000, defendants perfected this appeal.

For reversal, defendants contend that (1) the evidence was insufficient to show any negligence on their part; that (2) plaintiff was guilty of misconduct "in entering the jury box, going among the jurors, exhibiting her thumb to them and letting at least one juror feel her thumb"; that (3) counsel for plaintiff was guilty of misconduct in repeatedly asking witnesses "if the cab driver got out of the cab and opened the door for plaintiff when she got in and out of the cab and error of the court in admitting this evidence"; that (4) "the instructions of the court were erroneous, improper, misleading, and confusing"; that (5) "the verdict is grossly excessive and manifestly the result of prejudice which was designed, planned and executed".

The contentions so made by defendants will be considered in the order that same are above stated.

The pertinent and undisputed evidence bearing upon defendants' contention is that on the day of the alleged accident plaintiff telephoned defendants and requested that a cab be directed to her home; that upon entering the cab after it had arrived at her home, she directed the driver (Austin) to drive her to a residence north of Ardmore; that her purpose in going to said residence was to do housework; that enroute to the residence the cab driver accepted another person as a passenger; that upon reaching the residence she opened a rear door of the cab in order to alight therefrom; that she was wearing a loose-fitting coat; that upon alighting from the cab the lower portion of her coat caught upon the latch of the cab door; that this prevented the door from closing; that while she was undertaking to free her coat, the cab driver, from his position under the steering wheel of the cab, opened the door farther for the purpose of freeing her coat and then closed the door.

Plaintiff testified that at the time the driver opened the door to free her coat, she was attempting to extricate her coat with her right hand; that the driver closed the door on her right thumb; that this resulted in a painful and permanent injury to her thumb.

Plaintiff, on direct examination, testified in part as follows:

"A. Well, I had on a coat that didn't have any buttons on it, and it hung loose, and when I went to get out, why the coat hung on that thing, and I just turned around like this, and reached back like this, to loosen it, and when I did the cab driver didn't look back, he just slammed the door shut, and I guess he didn't slam it or something, but anyway, he opened it up and I jerked my coat, and I got it out, and he just slammed the door and went on, and he didn't even know, I don't guess, that my thumb was mashed."

The defendants assert that the quoted evidence wholly fails to show that they were negligent in any respect.

While the quoted testimony fails to either make clear the cause of the accident or that the cab driver was negligent, other testimony makes clear the cause of the accident and tends to show that the driver was negligent. On cross examination, plaintiff testified that "Yes, I was completely out,

but my coat was caught and it didn't come on out with me, so I just reached back and taken it off the hook, and the cab driver reached back and shut the door"; that "Well, I just turned around to get it unhung, and when I stuck my thumb back up that way to unhang it, why he shut the door". The cab driver testified that he "knew that she (plaintiff) got her coat hung in the door"; that he "opened the door and she got her coat out and I closed the door"; that he promptly drove away; that he did not know the position of plaintiff's hands at the time he closed the door.

At p. 1173, 34 A.L.R.2d, the annotator of notes beginning at p. 1172 of said volume, cites numerous cases as sustaining his note to the effect that "The owner or operator of a vehicle has been held liable in a number of cases for injury to the hand of a person in the vehicle door, on the theory that the owner or operator had failed to exercise that degree of care expected of a reasonable person under similar circumstances".

The Court of Appeals of Kentucky held in Jordan v. Marsee, 256 S.W.2d 25, that the operator of an automobile owes a guest the duty of reasonable care to avoid injuring him; that said duty applies when the operator discharges the guest; that the operator must give a guest a reasonable time to alight from an automobile.

▮ In Yellow Dime Cab Co., Inc. v. Pike, 195 Okl. 373, 158 P.2d 469, 470, we stated that "The defendant was a common carrier of passengers for hire. The law places upon common carriers the duty of exercising a very high degree of diligence for the safety of its passengers and the taxicab company is charged with the same degree of care."

▮ When the acts of Austin are considered in the light of the above quoted rule, it is apparent that a prima facie showing of negligence on the part of defendants was made. As heretofore pointed out, the cab driver knew before he closed the door upon plaintiff's thumb that a portion of her coat was not free of the cab. To our way of thinking the jury would have been justified in concluding that the driver should have anticipated that plaintiff in all probability would use her hands in attempting to free her coat and that in his closing the door some portion of her hand might be injured.

The evidence as to what was done by plaintiff and her counsel in exhibiting her injured thumb to the jury is conflicting. Defendants contend that plaintiff entered the jury box for the purpose of exhibiting her thumb; that her counsel invited the jurors to handle plaintiff's thumb and that one or more of the jurors did so; that following examination of the thumb one juror remarked that "her thumb's ruirnt".

Defendants assert that affidavits attached to their motion for new trial and a subsequent motion to vacate the order denying their motion for new trial, clearly establish the above referred-to facts.

At the hearing on the motion for new trial, the trial judge stated that he was present throughout the trial and "that what is in these affidavits is not what took place". He stated further that "an entire transcript by Gray Audograph was taken of this trial" and that the machine so used would have recorded statements allegedly made by plaintiff's counsel and the juror if they had in fact been made.

The record shows that the only objection made by defendants' counsel concerning or during the time that plaintiff exhibited her thumb to the jury was "We object to the demonstration, the length of time". It thus appears that defendants waited until after the jury had returned a verdict against them before charging plaintiff, her counsel and possibly a juror with misconduct.

In view of the conclusion reached by the trial court on the facts bearing on the contention under consideration, the question posed by defendants is whether the trial court erred in permitting plaintiff to pass in front of the jury for the purpose of exhibiting her injured thumb, in exhibiting both of her thumbs for comparison and in demonstrating the extent of her remaining use of the injured thumb.

■ In view of the nature of the injury and the fact that plaintiff, prior to trial, had submitted to a physical examination by a doctor of defendants' choice, we are of the opinion that the trial court did not abuse its discretion in permitting plaintiff to exhibit her injured thumb or in permitting the exhibition to be conducted in the manner in which it was conducted. See Jewel Tea Co. v. Ransdell, 180 Okl. 203, 69 P.2d 69; Shell Petroleum Corporation et al. v. Perrin, 179 Okl. 142, 64 P.2d 309, and 32 C.J.S. Evidence § 610, p. 459.

In her petition, plaintiff alleged that Austin "failed to get out of the cab and open the door for (plaintiff) and (plaintiff) opened the door and stepped out." (This allegation was stricken upon defendants' motion. During the course of the trial, plaintiff, over the objection of defendants' cousel, was permitted to testify that Austin did not open the cab door upon plaintiff's entering or leaving the cab.

The trial court instructed the jury in part that "though the Court allowed the plaintiff to prove that the driver of the cab did not get out of the cab to open the door for his passenger so that you would have the whole picture, the defendants did not owe the plaintiff the absolute duty to get out of the cab and open the door for her when he picked her up and when she was let out of his cab, and his mere failure to perform this act would not constitute negligence."

■ Defendants contend that irrespective of said instruction, the trial court erred in admitting evidence relative to whether Austin opened the cab door for plaintiff; that during the trial counsel for plaintiff stressed Austin's failure in said particular and thus led the jury to believe that Austin was negligent in not opening the door to the cab for plaintiff. We are unable to agree.

Plaintiff predicated negligence upon Austin's closing the cab door upon her thumb and not upon his failure to open the cab door. While questions propounded by counsel for plaintiff may have implied that if Austin had alighted from and had opened the cab door upon plaintiff's reaching her destination, he would have been in a position to note the position of her right hand as she undertook to extricate her coat and would therefore not have closed the door on her hand. But since the questions and answers only created an implication, we are convinced that same was overcome and erased from the jurors' minds by the quoted instruction.

The trial court instructed the jury that "a carrier of persons must use the utmost care and diligence for the safe carriage of its passengers, and the utmost care and diligence while the passenger is boarding or alighting from the vehicle, and is liable for any injury occasioned by the slightest negligence against which human prudence could have guarded."

Defendants did not object to the instruction so given. They nevertheless assert that in giving the last portion of the instruction the trial court in effect instructed the jury that defendants were "made insurers of plaintiff's safety"; that the court therefore gave an erroneous instruction on a fundamental issue.

It is clear that the complained-of instruction did not serve to make defendants an insurer. As we read the instruction, the jury was advised in substance that if defendants, as common carriers, were guilty of the slightest negligence in transporting plaintiff, this served to breach their duty to use the utmost care and diligence in transporting her. At p. 163, Sec. 1245, 10 Am. Jur. "Carriers", it is stated that "In general, however, carriers of passengers are required to exercise the highest degree of care, vigilance, and precaution for the safety of those it undertakes to transport, and are liable for the slightest negligence." This Court, on more than one occasion, has stated that a carrier owes a passenger the highest degree of care. See Oklahoma Ry. Co. et al. v. Clapp, Okl., 258 P.2d 638 and A & A Cab Operating Co. v. Drake, 200 Okl. 229, 192 P.2d 1004.

■■ As indicated by the matter above quoted, some courts have in effect concluded that the slightest negligence on the part of a carrier constitutes a breach of the carrier's

duty to exercise the highest degree of care in transporting a passenger. While we do not expressly approve of that portion of the instruction of which defendants complain, we are of the opinion that the giving of same did not serve to bring about a miscarriage of justice. In the first paragraph of the syllabus to Squyres v. Klick et al., Okl., 264 P.2d 325, 326, this is said:

> "Before the court will reverse a case for alleged errors in instructions given it must clearly appear that the instructions complained of have caused a miscarriage of justice."

■ In support of their contention that the verdict is excessive, defendants point to the fact that as of date of the injury, plaintiff was 60 years old; that she earned only $15 a week; that she returned to work approximately two months following the injury; that her medical bill was only $85.

The evidence shows that plaintiff received a multiple fracture to the distal phalanx of her right thumb; that the injury was such as to cause severe pain; that a doctor treated the thumb for approximately two months; that prior to receiving the injury plaintiff did housework for several families; that following the injury and because of the disability resulting therefrom her ability to do housework was impaired. Plaintiff testified that after resuming work for her former employers, all but one advised her that they would no longer need her services. The person for whom she continued to work testified that plaintiff, following the accident, did not perform satisfactorily a portion of the household duties which she had theretofore performed; that for said reason she herself performed said duties instead of plaintiff; that from observing plaintiff at work she had concluded that the injury had materially impaired her efficiency. The evidence fairly shows that the injury was such as to prevent plaintiff from doing housework satisfactorily, which work it appears, was the only work that she was capable of doing.

The doctor who treated plaintiff's thumb testified that the injury was permanent; that the thumb was disfigured and that the injury resulted in a 15% partial disability of the body as a whole. We assume that the doctor intended to say that the injury served to diminish by 15% plaintiff's ability to do housework. He testified further that the likelihood of arthritis developing in an injured joint is greater than in an uninjured joint.

Under all of the facts, we are not privileged to say that the verdict was excessive.

Affirmed.